GORDON VIRGIL WEGNER, Plaintiff and Respondent, v. DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

Thomas C. Lynch, Attorney General, and Wiley W. Manuel, Deputy Attorney General, for Defendant and Appellant.

Twohy, Wegner & Likens, Wegner & Likens and John M. Compton for Plaintiff and Defendant.

DEVINE, P. J. — The Department of Motor Vehicles appeals from a judgment granting a writ of mandate which commands the department to set aside its order suspending respondent's driving license for six months.

Respondent does not dispute the fact that the officers had reasonable cause to believe that he had been driving a motor vehicle on a highway while he was under the influence of intoxicating liquor. He refused to take the required tests unless an attorney or a doctor were present.

Shortly after the refusal, respondent announced that he would take a blood test. The technologist put the constricting band on his arm. Respondent then balked, saying, ''I don't want to be railroaded,'' and refused to continue. According to respondent's testimony, when the technologist started to take the blood respondent noticed that the man's hands were grimy and there was dirt under his fingernails. Respondent stated that he was more apprehensive of an abscess from a dirty needle than he was of a criminal charge, and he reiterated that he wanted a doctor at his own expense to be summoned to take the blood sample. Respondent was told again that he had a choice of one of three tests, but he refused all three.

Respondent was allowed to call his personal physician, a Dr. Brown. The doctor arrived about an hour and a half after respondent's refusal. Respondent asked that Dr. Brown be allowed to take a blood test at the sheriff's office and his request was refused. Dr. Brown drove respondent directly to a hospital and took a blood sample there. The test showed a result of 0.16 percent. This was around 5 a.m., about two hours after the formal request for taking of the test had been made by the officer.

■ The first issue in the appeal, as presented by the briefs, is whether the holder of an operator's license, when lawfully required as a condition to holding his license against suspension to take one of the three tests (blood, urine or breath) prescribed by Vehicle Code section 13353, having chosen to take the blood test, may comply with the statute by a consent which is made conditional upon the withdrawing of the blood by a physician of his choice. The trial judge held that such a consent was valid provided that an unreasonable delay in withdrawing the blood had not occurred. The decision, made on January 2, 1968, antedated that of *Fallis* v. *Department of Motor Vehicles*, 264 Cal.App.2d 373 [70 Cal. Rptr. 595], in which it was squarely held that such a qualified consent is a refusal (p. 382). The licensee has a right to an *additional* test made by his own physician (Veh. Code, § 13354), as was done in this case. It is argued by respondent that diminution of the alcoholic content in the blood with the passage of time can be measured, wherefore calculation could be made backward from the taking of the sample at five o'clock to the earlier time of the proposed test under the direction of the arresting officer. But the statute does not allow the procedure selected by respondent as an alternative. We hold, therefore, that respondent's conduct constituted a refusal.

■ Although the trial judge made his determination on the ground of the reasonableness of the substitution of the sampling taken by the physician for that proposed by the officer under the statute, and said it was not necessary to decide the question of the refusal by the licensee on the grounds that the procedure was unsanitary, he did make findings on the subject, the subject has been briefed on both sides, and we regard it as a second issue on appeal. The court's findings are stated thus: "6. When the technician arrived, the petitioner rolled up his sleeve and allowed the restricting band to be placed on his arm. 7. Petitioner then objected to the technician's taking of blood on the basis that his hands were grimy and that there was dirt under his fingernails."

But there is no evidence that respondent told the officers or the technologist that he feared that the needle was dirty because of the condition of the technologist's hands. Nor is there evidence that he protested that the particular needle was, or was likely to be, dirty. A general statement only was made about respondent's fears. This was insufficient. (See

*Westmoreland* v. *Chapman,* 268 Cal.App.2d 1, 6 [74 Cal.Rptr. 363].)

The officers and the department were left without opportunity to assess the validity of respondent's unannounced complaint. Of course, it was impossible for the trial court to determine that there actually was an unsterile needle in the hands of the technologist.

Even if respondent's observation of the condition of the hands of the technologist were correct (and the trial judge does not find that this was so, but only that the licensee's objection was on the basis of the condition of the technologist's hands and nails), respondent, by his failure to call attention to what he deemed objectionable, neglected to suggest to the officers or to the technologist a correction.

Although it may well be that if one or two of the three tests is objectionable to the licensee because of a valid technical deficiency he need not submit to a test which is not his first choice, nevertheless it is reasonable to require, and we hold that it is required, that the licensee upon whom demand is properly made must point out the deficiency which has caused him to refuse his preferred test with clearness sufficient to permit the officer or officers to decide upon the validity of his protest and if it is reasonable to do so. to take steps to meet the objection. To do less than this would be to make the provisions of the statute subject to easy evasion.

The judgment ordering that a writ of mandate issue is reversed and the trial court is directed to make findings consistent with this opinion and to render judgment denying the writ of mandate.

Rattigan, J., and Christian, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 11, 1969. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.