[No. G007669. Fourth Dist., Div. Three. Mar. 30, 1990.]

GARY GENE ROSS, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and
Respondent.

COUNSEL

Alan H. Stokke and Gerard Engelskirchen for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Henry G. Ullerich and Christopher C. Foley, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**SONENSHINE, J.**—Gary Gene Ross appeals a judgment denying his petition for a writ of mandate directed to the Department of Motor Vehicles. The sole issue is whether, following Ross's arrest for drunk driving, his request to see a laboratory technician's identification prior to allowing blood to be drawn constitutes a refusal pursuant to Vehicle Code section 13353.[1]

I

The facts are undisputed. Ross was arrested on September 14, 1986, by California Highway Patrol Officer Richard Geller on suspicion of driving under the influence of alcohol. He was taken to Orange County jail, where he was given a choice of taking a blood, breath, or urine test for the presence of alcohol in his body. Ross, believing it was the most accurate, chose the blood test.

When the technician who was to draw the blood arrived, he was wearing Levi's, a wrinkled shirt, and a plaid coat. He sported a beard and looked like he had just gotten out of bed. Alarmed by the technician's tired, disheveled appearance, Ross asked to see his identification. Officer Geller told him the technician was not required to show him his identification, but offered Ross a breath or urine test instead. Ross said, "I'll take a test, a blood test, I want to see his I.D. He saw mine, now I want to see his. Your [*sic*] not going to stick a needle in my arm."

Ross's request to see identification was deemed a refusal to submit to a chemical test. Following the suspension of his driving privilege by the Department of Motor Vehicles (§ 13353), he unsuccessfully sought a writ of mandate from the superior court. (Code Civ. Proc., § 1094.5.) This appeal followed.

---

[1] All statutory references are to the Vehicle Code unless otherwise specified.

At the time of the arrest, section 13353 provided, in pertinent part: "(a) If any person refuses the officer's request to submit to, or fails to complete, a chemical test or tests pursuant to section 23157, upon receipt of the officer's sworn statement . . . that the person had refused to submit to, or did not complete, the test or tests after being requested by the officer, the department shall (1) suspend the person's privilege to operate a motor vehicle for a period of six months . . . ."

## II

■ "When the facts do not conflict and the issues involve proper application of a statute or administrative regulation, a reviewing court is not bound by the trial court's determination. [Citation.]" (*Alba* v. *Los Angeles Unified School Dist.* (1983) 140 Cal.App.3d 997, 1005 [189 Cal.Rptr. 897].) We therefore apply our independent judgment to the legal issue presented.

The Legislature has provided that anyone driving a motor vehicle has impliedly consented to chemical testing following a lawful arrest for driving under the influence of alcohol. (§ 23157.) It has further decreed that refusal to submit to one of three tests results in suspension of driving privileges for varying periods of time. (§ 13353.) Ross contends his request to see the technician's identification was not a refusal, but rather a reasonable condition of his consent to take a blood test. Respondent counters that a conditional consent may properly be construed as a refusal.

Our Supreme Court has held the purpose of the implied consent law is to furnish law enforcement with a nonphysical means of coercing an arrestee into submitting to a chemical test. (*Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70, 77 [177 Cal.Rptr. 566, 634 P.2d 917].) Recent decisions have consistently held submission to a test may not be conditioned on demands by the arrestee. (*Kesler* v. *Department of Motor Vehicles* (1969) 1 Cal.3d 74 [81 Cal.Rptr. 348, 459 P.2d 900] [consent conditioned on being allowed to take all three tests]; *Goodman* v. *Orr* (1971) 19 Cal.App.3d 845 [97 Cal.Rptr. 226] [consent conditioned on an attorney being present]; *Fallis* v. *Dept. of Motor Vehicles* (1968) 264 Cal.App.2d 373 [70 Cal.Rptr. 595] [consent conditioned on the presence of a physician].)

The latest case addressing conditional consent is *Webb* v. *Miller* (1986) 187 Cal.App.3d 619 [232 Cal.Rptr. 50]. There, the arrestee insisted on looking at a card in his wallet which contained information about the accuracy of various tests, in order to assist him in selecting one. The arresting officer would not remove Webb's handcuffs to enable him to do this and determined his response a refusal. The Court of Appeal agreed. It held that "[u]pholding 'reasonable conditions' *imposed by licensees* would create an unworkable standard and force the officer in the field to determine on a case-by-case basis whether a licensee's request is a reasonable one. Such a reading could easily 'swallow the rule' [citation] of implied consent, thereby frustrating the strong public policy against drunk driving." (*Id.* at p. 627, italics added.)

■ Unlike *Webb* and the cases which predate it, our facts do not involve a condition *imposed by the arrestee,* unrelated to a statutory right. The Legislature has specifically provided an arrestee is entitled to have blood drawn by *only* licensed, qualified individuals in a medically approved manner. (§ 23158; Cal. Code Regs., tit. 17, § 1219.1.) Therefore, the condition is one *imposed by statute* and merely invoked by the arrestee.

The *Webb* rationale is simply irrelevant here. Ross's concern was reasonably related to the enforcement of his statutory right, rather than to a procedural deficiency, and thus did not amount to a refusal. Additionally, compliance would not have been difficult or time consuming. Nor would it have interfered with administration of the test.

In *Wegner* v. *Department of Motor Vehicles* (1969) 271 Cal.App.2d 838 [76 Cal.Rptr. 920], the court offered the possibility that a reasonable condition may attach to a consent where it is based on a health concern. Wegner had agreed to a blood test but then objected to the technician taking his blood on the basis his hands were grimy and there was dirt under his fingernails. However, he did not tell anyone this was his reason for refusing to complete the test.

"Although it may well be that if one or two of the three tests is objectionable to the licensee because of a valid technical deficiency he need not submit to a test which is not his first choice, nevertheless it is reasonable to require, and we hold that it is required, that the licensee upon whom demand is properly made must point out the deficiency which has caused him to refuse his preferred test with clearness sufficient to permit the officer or officers to decide upon the validity of his protest and if it is reasonable to do so, to take steps to meet the objection. To do less than this would be to make the provisions of the statute subject to easy evasion." (271 Cal.App.2d at p. 841.)

Respondent acknowledges *Wegner* but argues there is no evidence here that dirty needles would be used on Ross or that the technician was not qualified to draw blood. He claims Ross must rely upon the laws requiring blood to be drawn by a qualified individual in a medically approved manner. But that is not the point. Once he questioned the identity of the individual, Ross was entitled to assurances he was what he purported to be—a person qualified by statute to draw blood in a proper manner.

Respondent also contends *Wegner* is not controlling because, although Ross asked to see identification, he did not articulate the basis for his

concern, i.e., the technician's appearance which caused Ross to doubt his credentials. He argues the mere request to see identification does not "point out the deficiency . . . with clearness sufficient to permit the officer . . . to decide upon the validity of his protest and . . . take steps to meet the objection." (271 Cal.App.2d at 841.) However, the request that the technician produce identification was sufficient to apprise the officer that Ross questioned his identity and gave the officer a reasonable method of meeting his objection.

A related question is whether the presence of the officer was, by itself, enough to assure Ross of the qualifications of the technician. Section 23158 provides certain individuals may draw blood when "acting at the request of a peace officer." There is evidence this technician was acting at the officer's direction, but that is no indication the officer had any peculiar knowledge of his identity or qualifications.

■ Expecting one who is acting in an official capacity to produce proper identification is neither novel nor burdensome. Where that person intends to intrude into the body with a needle, it is not only reasonable, but prudent to require identifying information clearly displayed. In the wake of the public's legitimate anxiety over the transmission of the AIDS virus intravenously, it is understandable that an arrestee could entertain an honest concern.

The United States Supreme Court has acknowledged "the serious questions which would arise if a search involving use of medical technique, even of the most rudimentary sort, were made by other than medical personnel or in other than a medical environment—for example, if it were administered by police in the privacy of the stationhouse. To tolerate searches under these conditions might be to invite an unjustified element of personal risk of infection and pain." (*Schmerber* v. *California* (1966) 384 U.S. 757, 771-772 [16 L.Ed.2d 908, 86 S.Ct. 1826].) That risk is no less important where licensing privileges are at stake.

We do not suggest such assurances must be given in each instance. In the vast majority of cases, arrestees will express no hesitation about the technician's qualifications or identity. However, where such hesitation *is* expressed, some form of assurance must be given.[2]

---

[2] We do not pass upon the form that assurance must take. Here, the officer refused to give the arrestee any form of assurance and we have held the mere presence of the officer is insufficient comfort. The simplest method, and the one specifically requested by Ross, is to produce some form of identification. That does not preclude other methods warranted by the circumstances.

The judgment denying the writ of mandate is reversed with directions to the superior court to enter judgment granting the writ.

Wallin, Acting P. J., and Moore, J., concurred.

Respondent's petition for review by the Supreme Court was denied July 18, 1990.