[No. A052577. First Dist., Div. Two. Nov. 15, 1991.]

MARK ANTHONY PAYNE, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

## COUNSEL

Daniel E. Lungren, Attorney General, N. Eugene Hill, Assistant Attorney General, Jose R. Guerrero and Kim M. Settles, Deputy Attorneys General, for Defendant and Appellant.

Monte L. Hansen for Plaintiff and Respondent.

## OPINION

**BENSON, J.**—The California Department of Motor Vehicles (DMV), appeals from judgment granting a writ of mandate. The trial court directed DMV to set aside its order suspending respondent Mark Anthony Payne's (Payne) driving privilege for failure to submit to a blood, breath, or urine test as required by Vehicle Code section 13353,[1] the implied consent law. DMV contends Payne's conduct constituted a refusal to submit to the required chemical test as a matter of law. We agree and reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

The essential facts are undisputed. After he was involved in an injury accident on September 30, 1989, Payne was lawfully arrested by California Highway Patrol Officer Jerry Schumaker for driving under the influence of alcohol. Officer Schumaker advised Payne at the scene that he was required by state law to submit to one of three chemical blood-alcohol tests. Payne replied he would not take any tests.

Officer Schumaker then transported Payne to the Sacramento County jail where he again advised Payne that failure to submit to one of the tests would

---

[1] All further statutory references are to the Vehicle Code unless otherwise noted.

result in suspension of his driving privilege.[2] Payne responded he would not take a breath or urine test. He said he would only take a blood test administered by his own physician, because he was concerned about the cleanliness of the jail and the safety of having blood drawn there. Officer Schumaker informed Payne he was not entitled to have the test administered by his personal physician and explained that the nurse at the jail was qualified and registered by the County of Sacramento. The officer then advised Payne he was in violation of section 13353 and that his blood would be taken by the nurse. Thereafter, Payne submitted to the blood test without physical resistance, but insisted that his blood was being drawn under protest.

The DMV revoked Payne's driving privilege for two years on the ground that he had refused to submit to a chemical test. After an administrative hearing before a referee, the DMV upheld the revocation. Payne petitioned the superior court for a writ of mandate to set aside the DMV's order revoking his driving privilege. The superior court granted the writ. This appeal followed.

## DISCUSSION

■ When the facts are undisputed, as here, a question involving the proper application of a statute or administrative regulation is one of law, and a reviewing court is not bound by the trial court's determination. (*Ross* v. *Department of Motor Vehicles* (1990) 219 Cal.App.3d 398, 401 [268 Cal.Rptr. 102]; *Carrey* v. *Department of Motor Vehicles* (1986) 183 Cal.App.3d 1265, 1270 [228 Cal.Rptr. 705].) ■ We therefore apply our independent judgment to the single legal issue presented here; whether Payne's conduct constituted a refusal to submit to a chemical test. We conclude the DMV was correct in ordering the suspension of Payne's license and that the superior court erred in granting the writ of mandate.

Section 13353 provides that any person, arrested for driving under the influence of alcohol, who refuses to submit to a chemical test will have his

---

[2]Officer Schumaker's admonition, read from form DL367, was: "You are required by state law to submit to a chemical test to determine the alcoholic and drug content of your blood. You have a choice of whether the test is to be of your blood, breath, or urine. If you refuse to submit to or fail to complete a test, your driving privilege will be suspended six months and revoked for two or three years. . . . Refusal or failure to complete a test may be used against you in court. Refusal or failure to complete a test will also result in a fine and imprisonment if this arrest results in a conviction of driving under the influence. You do not have the right to talk to an attorney or to have an attorney present before stating whether you will submit to a test, before deciding which test to take, or during the test. If you cannot complete the test you chose, you must submit to and complete a remaining test."

driving privilege suspended.[3] In determining whether an arrested driver's conduct amounts to a refusal to submit to a test, the court looks not to the state of mind of the arrested driver, but to "the fair meaning to be given [the driver's] response to the demand he submit to a chemical test." (*Barrie* v. *Alexis* (1984) 151 Cal.App.3d 1157, 1161 [199 Cal.Rptr. 258]; *Cole* v. *Department of Motor Vehicles* (1983) 139 Cal.App.3d 870, 874 [189 Cal.Rptr. 249].)

We find *Barrie* v. *Alexis, supra,* 151 Cal.App.3d 1157 instructive. Barrie was arrested for driving while intoxicated, but refused to take any chemical test. (*Id.* at p. 1160.) She was transported to a hospital where a blood sample was nonetheless taken. (*Id.* at p. 1161.) Although she offered no physical resistance to the test, Barrie proclaimed she was taking the test under protest. (*Ibid.*) The court held that her response was an unequivocal refusal to submit to a test, leaving no room for construction and constituting a valid basis for suspension of her driving privilege. (*Ibid.*) The court also stressed that submitting under protest made her refusal clear, even though she offered no physical resistance. (*Ibid.*)

In the present case, Payne initially refused to submit to any test and later agreed to submit to a blood test only if administered by his personal physician. Like *Barrie*, Payne finally submitted to a test without physical resistance, but under protest. Unlike *Barrie*, Payne did not refuse outright to submit, but conditioned his consent on his doctor administering the test. However, this distinction is of no help to Payne.

A conditional consent to a chemical test constitutes a refusal to submit within the meaning of section 13353. (*Webb* v. *Miller* (1986) 187 Cal.App.3d 619, 626 [232 Cal.Rptr. 50]; *Cole* v. *Department of Motor Vehicles, supra,* 139 Cal.App.3d at p. 873; *Fallis* v. *Dept. of Motor Vehicles* (1968) 264 Cal.App.2d 373, 382 [70 Cal.Rptr. 595].) In *Fallis,* a lawfully arrested driver refused to submit to a chemical test unless he could consult with his own doctor. (264 Cal.App.2d at p. 377.) The court held the arrestee's conduct constituted a refusal, stating: "A licensee may not qualify his consent to submit to a test by a condition that the test be administered by or in the presence of his own physician. Such a qualified consent is in fact a

---

[3]The pertinent part of section 13353, subdivision (a) reads: "If any person refuses the officer's request to submit to, or fails to complete, a chemical test or tests pursuant to Section 23157, upon receipt of the officer's sworn statement that the officer had reasonable cause to believe the person had been driving a motor vehicle in violation of Section 23152 or 23153 and that the person had refused to submit to, or did not complete, the test or tests after being requested by the officer, the department shall (1) suspend the person's privilege to operate a motor vehicle for a period of one year, (2) revoke the person's privilege to operate a motor vehicle for a period of two years . . . , or (3) revoke the person's privilege to operate a motor vehicle for a period of three years . . . ."

refusal to take the test provided by the statute." (*Id.* at p. 382.) Payne's conditional consent here, as in *Fallis*, constituted a refusal to submit to the test.

■ The fact that Payne eventually submitted without physically resisting is of no significance. (See *Barrie* v. *Alexis, supra,* 151 Cal.App.3d at p. 1162; *Cole* v. *Department of Motor Vehicles, supra,* 139 Cal.App.3d 870, 875.) "It is the initial refusal which forms the basis for suspension of the driver's license under section 13353." (*Barrie, supra,* at p. 1162.) That a blood sample was eventually obtained does not meet the requirements of section 13353. (151 Cal.App.3d at p. 1162.) Consequently, the taking of Payne's blood sample has no bearing on his refusal to submit to a test.

Payne nonetheless contends that because the condition he placed on submitting to a blood test was based on a health concern, it should not constitute a refusal to submit to a test. Payne relies on *Ross* v. *Department of Motor Vehicles, supra,* 219 Cal.App.3d 398. Ross, who was arrested for drunk driving, chose a blood test, but became alarmed at the disheveled appearance of the technician who was to take his blood. (*Id.* at p. 400.) Ross asked to see the technician's identification before he would allow the technician to draw blood. (*Ibid.*) The arresting officer refused to allow Ross to see the technician's identification. (*Ibid.*) Ross's request to see identification was deemed a refusal to submit to a chemical test and his driving privilege was suspended. (*Ibid.*) The Court of Appeal reversed the suspension. (*Id.* at p. 404.) The court reasoned that because an arrestee is entitled by statute (§ 23158) to have blood drawn by only licensed, qualified individuals, the condition was not imposed by Ross, but was imposed by statute and only invoked by Ross. (219 Cal.App.3d at p. 402.) Since Ross's request to see identification was reasonably related to the enforcement of his statutory right, it did not amount to a refusal. (*Ibid.*) The court held that when hesitation is expressed about the qualifications of the individual administering a blood test, some form of assurance must be given. (*Id.* at p. 403.)

Payne contends *Ross* v. *Department of Motor Vehicles, supra,* 219 Cal.App.3d 398 stands for the proposition that if an arrestee has a health concern, that concern is a reasonable condition which he or she may place on consent to submit to a chemical test. We disagree. ■ *Ross* held only that an arrestee must be given assurance of the qualifications of the individual drawing blood if hesitation is expressed. Insisting on one's own physician, as Payne did, goes far beyond questioning the qualifications of the person administering a blood test. The present case does not warrant expansion of the *Ross* holding. In denying the right of an arrested driver to impose conditions on consent to a chemical test, the Second District of the Court of Appeal has said: "Upholding 'reasonable conditions' imposed by licensees would create an unworkable standard and force the officer in the field to

determine on a case-by-case basis whether a licensee's request is a reasonable one. Such a reading could easily 'swallow the rule' [citation] of implied consent, thereby frustrating the strong public policy against drunk driving." (*Webb* v. *Miller, supra,* 187 Cal.App.3d 619, 627.) We agree.

Payne's conduct does not fall within the rule enunciated in *Ross* v. *Department of Motor Vehicles, supra,* 219 Cal.App.3d 398. In insisting on his own physician, Payne was not invoking a statutory right, but was imposing a condition to which he was not entitled. His conduct amounted to a refusal to submit to a chemical test within the meaning of section 13353.

### DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with directions to enter a new and different judgment denying the petition for mandate.

Kline, P. J., and Smith, J., concurred.