HAROLD M. RUCH, APPELLANT, v. JACK C. CONRAD, DIRECTOR,
DEPARTMENT OF MOTOR VEHICLES, STATE OF NEBRASKA,
APPELLEE.

526 N.W.2d 653

Filed February 3, 1995.   No. S-92-975.

Greg C. Harris, Michael D. Carper, and Bernard J. Glaser, Jr., for appellant.

Don Stenberg, Attorney General, and Paul N. Potadle for appellee.

HASTINGS, C.J., WHITE, CAPORALE, LANPHIER, and WRIGHT, JJ.

CAPORALE, J.

Defendant-appellee, Jack C. Conrad, director of the

Department of Motor Vehicles, ordered the revocation of plaintiff–appellant Harold M. Ruch's license to operate a motor vehicle because of the latter's refusal to submit to a blood alcohol test, contrary to the provisions of the then–applicable statutes, as hereinafter set forth. Ruch appealed to the district court, which affirmed the director's order. Ruch then appealed to the Nebraska Court of Appeals, which affirmed the judgment of the district court. *Ruch v. Conrad*, 94 NCA No. 25, case No. A–92–975 (not designated for permanent publication). Ruch thereupon successfully petitioned this court for further review, claiming, among other things, that the Court of Appeals erroneously upheld the district court's finding that his refusal to submit to testing was unreasonable. We now reverse the judgment of the Court of Appeals and remand the cause with direction.

As provided in then Neb. Rev. Stat. § 39–669.18 (Reissue 1988), Ruch instituted his appeal from the director's order to the district court on April 22, 1992, under the Administrative Procedure Act, Neb. Rev. Stat. §§ 84–901 through 84–920 (Reissue 1987 & Cum. Supp. 1992). Although Administrative Procedure Act appeals instituted on or after July 1, 1989, are reviewed by the district court de novo on the record, the district court's decision is reviewed by the appellate tribunals of this state for error on the record. §§ 84–917(5)(a) and 84–918. Thus, the inquiry here necessarily is whether the decision of the Court of Appeals conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Crawford v. Department of Motor Vehicles*, 246 Neb. 319, 518 N.W.2d 148 (1994). Whether a decision conforms to the law is by definition a question of law, in connection with which an appellate court has an obligation to reach a conclusion independent of that of the inferior court. See *Fiese v. Sitorius, ante* p. 227, 526 N.W.2d 86 (1995).

After being arrested on November 14, 1991, for driving while under the influence of alcohol, Ruch was transported to a local hospital for a blood alcohol test. Upon arrival, the arresting officer instructed a laboratory technician to draw two vials of blood. Ruch rolled up his sleeve and said, "[O]kay," whereupon the technician placed a tourniquet on Ruch's arm.

Ruch then asked to "see the credentials of the person that was going to administer the test." The officer told Ruch that the technician was "not required to by law, by our department, or by an organization to carry any" and that if Ruch did not allow the blood to be drawn, Ruch would be considered to have refused to submit to the test. Ruch replied that he was "not refusing to take the test, [he] would be happy to do so upon seeing the credentials of the person that was going to put a needle into [his] arm." Ruch explained he wanted to know the technician's credentials because he was concerned about getting AIDS.

Although the technician attempted to locate a document to show she was qualified to draw blood, none was found.

Ruch claimed he was not told anything about her qualifications to draw blood other than the fact that the officer said she was a "lab tech," but the officer did not explain what such a person does. According to the officer, the technician at one point stated that she did not have a document but that she "is licensed and that she's got some . . . ." However, she did not say by whom she was licensed, nor did she produce any credential. Neither did anyone explain the technician's training or experience in drawing blood.

Ruch did recall that while in the hallway, the officer waved a piece of blue plastic and asked, "[I]s this good enough?" Ruch believed the item to be a name tag and responded, "No," as it was too far away to be read.

The officer also testified that while he and Ruch were located inside a room with the door open, the nursing supervisor happened to be walking down the hallway, met the lab technician, reminded the technician that she was such, and told her that this was "procedure." However, there is no evidence that Ruch heard the nursing supervisor's statements.

Ruch did not permit any blood to be drawn.

The statutes in force at the time of Ruch's arrest and subsequent February 26, 1992, hearing before the director deemed one arrested for driving while under the influence of alcohol to have consented to submit to a blood alcohol test, Neb. Rev. Stat. § 39–669.08 (Cum. Supp. 1990), and empowered the director to revoke the motor vehicle operator's

license of one who refused to submit to such a test and who failed to show that "such refusal . . . was reasonable," Neb. Rev. Stat. § 39–669.16 (Reissue 1988), provided that blood could be drawn by a "qualified technician acting at the request of a law enforcement officer," Neb. Rev. Stat. § 39–669.14 (Cum. Supp. 1990).

A refusal to submit to a blood alcohol test occurs when the licensee, after being asked to submit to such a test, so conducts himself or herself as to justify a reasonable person in the requesting officer's position in believing that the licensee understood that he or she was asked to submit to a test and manifested an unwillingness to take it. *Hoyle v. Peterson*, 216 Neb. 253, 343 N.W.2d 730 (1984); *Martinez v. Peterson*, 212 Neb. 168, 322 N.W.2d 386 (1982); *Wohlgemuth v. Pearson*, 204 Neb. 687, 285 N.W.2d 102 (1979).

There is no such thing as conditional or qualified refusal; anything short of an unqualified, unequivocal assent to an officer's request that the arrested licensee take the test constitutes a refusal to do so. *Clontz v. Jensen*, 227 Neb. 191, 416 N.W.2d 577 (1987); *Hoyle, supra*; *State v. Pandoli*, 109 N.J. Super. 1, 262 A.2d 41 (1970).

However, if a licensee's refusal to submit to a test is reasonable under the circumstances, there can be no revocation of the licensee's license. *Hoyle, supra*. Justifiable refusal of the test depends upon some illegal or unreasonable aspect in the nature of the request, the test itself, or both. *Id.*

We agree with those courts which have held that the fear of needles or AIDS does not in and of itself provide a justifiable basis for refusing to submit to testing. E.g., *State v. Krause*, 168 Wis. 2d 578, 484 N.W.2d 347 (Wis. App. 1992); *Com., D.O.T., Bur. of Dr. Lic. v. Mease*, 148 Pa. Commw. 14, 610 A.2d 76 (1991); *Franko v. Commissioner of Public Safety*, 432 N.W.2d 469 (Minn. App. 1988).

However, here, because of Ruch's fear of contracting AIDS if the blood were not drawn by a qualified technician, presumably because an unqualified person might not employ sterile and otherwise safe techniques, Ruch wanted assurance that the technician who was going to invade his body was qualified to do so. Thus, his refusal rested not on his fear of

contracting AIDS per se, but on the failure of being assured that the technician was qualified.

As noted earlier, § 39–669.14 required that the technician be "qualified" to draw blood. While we have held that under that statute no particular license or permit establishes whether one is so qualified, such being a matter of training and experience, *State v. Stein*, 241 Neb. 225, 486 N.W.2d 921 (1992), we have not heretofore considered under what circumstances and how a technician's qualifications must be made known, if at all, to one who is about to have one's body invaded for the purpose of having blood withdrawn.

In those respects, *Ross v. Department of Motor Vehicles*, 219 Cal. App. 3d 398, 268 Cal. Rptr. 102 (1990), is instructive. Therein, the motorist was taken to a local jail for the purpose of having a blood alcohol sample drawn. The technician who was to draw the blood arrived in Levi's, a wrinkled shirt, and a plaid coat. He wore a beard and looked tired and disheveled, as if he had just gotten out of bed. The motorist asked to see some identification, and the police officer stated that the technician was not required to show any. The motorist insisted on seeing the technician's identification, saying, " 'Your [sic] not going to stick a needle in my arm.' " *Id.* at 400, 268 Cal. Rptr. at 103.

In concluding that the motorist had not refused to submit to the test, the *Ross* court reasoned that as the California statute required that blood be drawn by only licensed, qualified individuals in a medically approved manner, the motorist was merely insisting on a statutorily imposed condition to the test.

The court reasoned that even though there was no evidence that unclean needles would be used or that the technician was unqualified, the motorist need not rely solely on the existence of the qualifications statute or on the fact that the police officer directed the technician. Once the motorist questioned the identity of the technician, he was entitled to actual assurances that the technician was qualified by statute to draw blood in a proper manner, explaining:

> Expecting one who is acting in an official capacity to produce proper identification is neither novel nor burdensome. Where that person intends to intrude into the

body with a needle, it is not only reasonable, but prudent to require identifying information clearly displayed. In the wake of the public's legitimate anxiety over the transmission of the AIDS virus intravenously, it is understandable that an arrestee could entertain an honest concern.

*Ross*, 219 Cal. App. 3d at 403, 268 Cal. Rptr. at 105.

While the blood–drawing setting involved here is far different from that presented in *Ross*, and while in *Ross* the technician's identity was in question rather than his qualifications, the *Ross* reasoning nonetheless remains persuasive. We thus hold that if a licensee questions the qualifications of the technician who is to draw blood, the licensee shall be orally or otherwise informed of the technician's training and experience.

Inasmuch as that was not done, Ruch's refusal to have his blood drawn was reasonable.

That determination makes consideration of Ruch's other assignments of error unnecessary.

Accordingly, the judgment of the Court of Appeals is reversed and the cause remanded to that court with the direction that it reverse the judgment of the district court.

REVERSED AND REMANDED WITH DIRECTION.

FAHRNBRUCH, J., participating on briefs.

CONNOLLY, J., not participating.