[No. D048540. Fourth Dist., Div. One. June 27, 2007.]

DALE HILDEBRAND, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

Counsel

William D. Holman for Plaintiff and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Jacob A. Appelsmith, Assistant Attorney General, Chris A. Knudsen and Michael J. Early, Deputy Attorneys General, for Defendant and Respondent.

Opinion

**HUFFMAN, Acting P. J.**—Plaintiff Dale Hildebrand appeals the trial court's judgment denying his petition for writ of mandate, upholding the administrative suspension by respondent, the Department of Motor Vehicles (DMV), of his driving privileges. (Veh. Code,[1] § 13353; Code Civ. Proc., § 1094.5.) Hildebrand contends there was insufficient admissible evidence introduced at the DMV's administrative hearing to establish he was driving at the relevant time because the only such evidence introduced at the hearing was the inadmissible hearsay statement of a non-peace officer.

Hildebrand further claims the evidence was insufficient to support the trial court's finding that he had refused to complete a chemical test after appropriate admonishment, and therefore suspension of his license should be set aside.

We conclude the trial court's decision to deny the petition for writ of mandate was based on substantial evidence and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Arrest*

Around 2:30 a.m. on July 17, 2005, fire department engine 3 was returning to the station when its occupants observed a vehicle stuck on the train tracks in the 1100 block of West Laurel Street. Fire Captain G. Uzdavines approached the vehicle while the driver, later identified as Hildebrand, was revving the engine in an attempt to drive off the tracks, which was causing the right wheel to spin and sling gravel. Uzdavines helped Hildebrand, the only occupant, out of the car and to the sidewalk in case a train came along. Hildebrand appeared to him to be too intoxicated to walk.

---

[1] Unless otherwise indicated, all subsequent statutory references are to the Vehicle Code.

Captain Uzdavines then reported to the San Diego Police Department (SDPD) that a suspected drunk driver, Hildebrand, had driven his car onto, and become stuck on, train tracks. Officer D. Brackrog responded to the scene first and Uzdavines informed the officer of what had happened. At approximately 3:05 a.m., Officers S.J. Samoncik and H. Hernandez of the traffic unit came to the scene, and Samoncik took over the investigation. Brackrog told Samoncik where Hildebrand was and Samoncik approached Hildebrand, who was leaning against a fence railing with his head slumped forward. Samoncik immediately noticed signs of Hildebrand's intoxication, including an odor of alcohol coming from his breath and person, bloodshot and watery eyes, drooping eyelids, and the appearance that he was about to fall asleep on his feet. After Samoncik introduced himself, Hildebrand told the officer he was entitled to professional courtesy because his roommate was a vice detective.

Officer Samoncik administered a series of coordination tests. In the gaze nystagmus test, Hildebrand was unable to smoothly follow Samoncik's finger as the officer moved it from right to left. Samoncik then asked Hildebrand to step off the fence rail. Hildebrand took an exaggerated step forward onto the toe of Samoncik's boot. Samoncik then administered a one-leg stand test, and Hildebrand immediately lost his balance and started to fall. Determining Hildebrand was intoxicated for the purposes of driving, Officer Samoncik placed him under arrest and assisted him to the patrol car.

Hildebrand was transported to SDPD headquarters where a chemical test was required for determining his blood-alcohol content (BAC). Hildebrand chose a breath test but was unable to complete all portions of the test. His first sample showed a BAC of .21 percent, however, he could not provide a second sample. Numerous attempts to complete a second breath sample were taken, but all failed because Hildebrand puffed out his cheeks while placing his tongue on the end of the mouthpiece, and he would not blow hard enough to make the machine sound for eight to 10 seconds. After his sixth attempt, Hildebrand stated, "I'm blowing as hard as I can. If that's not good enough . . . too bad. And I'm not taking any other tests."

Officer Samoncik voided the test and explained to Hildebrand that he was still required to submit a sample and because he could not complete the breath test, he was required to give a blood sample. Hildebrand responded, "Fuck you . . . I'm not giving a blood sample. You got what you got now let me go!" When Samoncik tried to read the refusal admonishment on the back of the "Admin Per Se" form, Hildebrand continued his tirade about professional courtesy and insisted that he wanted his lawyer there "right fucking now!" At that point, Samoncik informed Hildebrand that he was refusing to

submit to a blood test and explained his options after refusing—Hildebrand could either voluntarily provide a sample or a forced blood draw would be taken. In response, Hildebrand again insisted on professional courtesy and his lawyer being called and present.

Officer Samoncik notified the watch commander that Hildebrand was going to require a forced blood draw and placed him in the secure chair. Samoncik again read the refusal admonishment to Hildebrand. Thereafter, a forced blood draw was taken, which revealed that Hildebrand had a BAC of .22 percent. In the course of the arrest, Hildebrand was served with an administrative per se suspension/revocation order, suspending his license for two years.

### B. *Administrative Hearing*

On August 25, 2005, an administrative per se hearing was held on the elements of an implied consent violation. The reports were submitted and Hildebrand testified about his efforts to complete the breath test. On September 26, 2005, the DMV issued Hildebrand a notification of findings and decision informing him that the evidence indicated that he had refused to complete a chemical test when requested to do so by a police officer. Specifically, the DMV determined (i) the police officer had reasonable cause to believe Hildebrand was driving a vehicle; (ii) Hildebrand was placed under lawful arrest; (iii) Hildebrand was told that his driving privileges would be suspended or revoked if he refused to complete the required testing; and (iv) Hildebrand refused or failed to complete the chemical test or tests.

### C. *Mandamus Proceedings and Ruling*

On October 4, 2005, Hildebrand filed a petition for writ of administrative mandamus challenging the decision to suspend his license. (Code Civ. Proc., § 1094.5.) He claimed he never refused to take a chemical test and there was no admissible evidence that he was driving the vehicle. On February 23, 2006, a hearing was held and the court denied Hildebrand's petition. On May 2, 2006, Hildebrand filed a notice of appeal.

### DISCUSSION

### I

### *STANDARD OF REVIEW*

In ruling on a petition for writ of mandate following an order of suspension or revocation, a trial court is required to determine, based on its independent

judgment, whether the weight of the evidence supported the administrative decision. (*Lake v. Reed* (1997) 16 Cal.4th 448, 456 [65 Cal.Rptr.2d 860, 940 P.2d 311] (*Lake*).) The parties do not dispute that the superior court appropriately utilized the independent judgment test in deciding the application for writ of mandate following the order of suspension. (*Manriquez v. Gourley* (2003) 105 Cal.App.4th 1227, 1233 [130 Cal.Rptr.2d 209]; *Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817, 824 [85 Cal.Rptr.2d 696, 977 P.2d 693] (*Fukuda*).) Under the independent judgment test, the court determines whether the administrative hearing officer abused his or her discretion because the findings are not supported by the weight of the evidence. (*Fukuda*, at pp. 816–817.) The administrative findings come before the superior court with a "strong presumption of correctness," and the burden rests on the petitioner to establish administrative error. (*Id.* at p. 817.)

On appellate review of the superior court's exercise of its independent judgment, this court will sustain the court's findings if they are supported by substantial evidence. (*Fukuda, supra,* 20 Cal.4th at p. 824.) We resolve all conflicts in favor of the DMV, as the party prevailing in the superior court, and give it the benefit of all reasonable inferences in support of the judgment. (*Pasadena Unified Sch. Dist. v. Commission on Professional Competence* (1977) 20 Cal.3d 309, 314 [142 Cal.Rptr. 439, 572 P.2d 53].) We do not substitute our deductions regarding the record for those of the superior court. (*Ibid.*) " ' "We may overturn the trial court's factual findings only if the evidence before the trial court is insufficient as a matter of law to sustain those findings. [Citation.]" ' [Citation]." (*Lake, supra,* 16 Cal.4th at p. 457.)

In a case in which the pertinent facts are not in conflict and the only issues presented are interpretations of a statute or regulation, an appellate court is not bound by the trial court's legal conclusions. (*Spitze v. Zolin* (1996) 48 Cal.App.4th 1920, 1925–1926 [56 Cal.Rptr.2d 573].) Here, however, the superior court analyzed the record, made credibility determinations, and applied the law to the facts as established in that manner. Accordingly, we should give the trial court appropriate deference with respect to its views on whether the administrative findings were supported by the weight of the evidence. (*Fukuda, supra,* 20 Cal.4th 805, 816–817.)

## II

### SUFFICIENT ADMISSIBLE EVIDENCE WAS INTRODUCED AT THE DMV ADMINISTRATIVE HEARING TO ESTABLISH HILDEBRAND WAS DRIVING

A. *Issues Presented*

Hildebrand contends insufficient admissible evidence was introduced at the DMV's administrative hearing to establish he was driving. Specifically, he claims the observations of Fire Captain Uzdavines contained in Officer Samoncik's sworn "Officer's Statement" and in his unsworn arrest report are inadmissible to prove he was driving.

■ To justify suspension of Hildebrand's driving privilege, it is the DMV's burden to prove that Officer Samoncik had reasonable cause to believe that Hildebrand was driving in violation of section 23152 or 23153. (*Gananian v. Zolin* (1995) 33 Cal.App.4th 634, 638 [39 Cal.Rptr.2d 384] (*Gananian*).) In meeting its burden at the administrative level, the DMV may present "[a]ny relevant evidence . . . if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions." (Gov. Code, § 11513, subd. (c).) "A police officer's report, even if unsworn, constitutes 'the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs.' " (*Lake, supra*, 16 Cal.4th at p. 461; see *MacDonald v. Gutierrez* (2004) 32 Cal.4th 150, 158–159 [8 Cal.Rptr.3d 48, 81 P.3d 975].) Moreover, the DMV may use hearsay evidence "for the purpose of supplementing or explaining other evidence . . . ." (Gov. Code, § 11513, subd. (d).) However, hearsay evidence is not "sufficient in itself to support a finding unless it would be admissible over objection in civil actions." (Gov. Code, § 11513, subd. (d); see *Gananian, supra*, 33 Cal.App.4th at p. 640.)

In this case, the DMV offered two pieces of evidence to prove Hildebrand was driving: (i) Officer Samoncik's sworn Officer's Statement and (ii) Samoncik's unsworn arrest report. Both documents included statements that Captain Uzdavines said Hildebrand was the driver. In the Officer's Statement, Samoncik checked the box stating that Uzdavines observed Hildebrand driving at the time of arrest. In the unsworn arrest report, Samoncik stated Uzdavines saw the vehicle, driven by Hildebrand, stuck on the railroad tracks, and Uzdavines saw Hildebrand, the only occupant, in the driver's seat and helped him to the sidewalk. Additionally, Hildebrand answered questions at the time of the arrest about where he was going and

why he got stuck on the tracks. In response to the question "where are you going," he answered "home." In giving his "explanation for driving" and why he became lodged on the tracks, he told Samoncik he "took a wrong turn."

In challenging the DMV's evidentiary showing, Hildebrand argues that the hearsay statements of Captain Uzdavines "would not be admissible over objection in any civil action and thus [are] not . . . admissible . . . ." The DMV responds that the Officer's Statement and unsworn arrest report, which included Captain Uzdavines's statements, would be admissible in a civil action under the public employee records exception to the hearsay rule to establish the fact of driving. (Evid. Code, § 1280.) Furthermore, DMV argues Captain Uzdavines's statements would be admissible for the purpose of supplementing or explaining defendant's admissions under Government Code section 11513 administrative rules. We discuss those statutory arguments separately.

B. *Evidence Code Section 1280 Principles*

 In analyzing these issues, we are mindful that they arose in an administrative hearing context, and they involve several layers of reports and statements by public safety employees acting within the scope of their duties. Pursuant to Evidence Code section 1280, we agree with the DMV that the Officer's Statement and unsworn arrest report each qualifies as an admissible public employee record in the administrative hearing, even to the extent that each reports Uzdavines's personal observations. These reports are each sufficient to prove that Hildebrand was driving. Evidence Code section 1280 makes admissible a writing that records an act, condition, or event if "(a) [t]he writing was made by and within the scope of duty of a public employee[;] [¶] (b) [t]he writing was made at or near the time of the act, condition, or event[; and] [¶] (c) [t]he sources of information and method and time of preparation were such as to indicate its trustworthiness." "The object of this hearsay exception 'is to eliminate the calling of each witness involved in [the] preparation of the record and substitute the record of the transaction instead. [Citations.]' [Citation.] Accordingly, for the exception to apply, '[i]t is not necessary that the person making the entry have personal knowledge of the transaction. [Citations.]' [Citation.] Assuming satisfaction of the exception's other requirements, '[t]he trustworthiness requirement . . . is established by a showing that the written report is based upon the observations of public employees who have a duty to observe the facts and report and record them correctly.' [Citation.]" (*Gananian, supra*, 33 Cal.App.4th at pp. 639–640, fns. & italics omitted.)

In *McNary v. Department of Motor Vehicles* (1996) 45 Cal.App.4th 688 [53 Cal.Rptr.2d 55] (*McNary*), the court held that hearsay statements of one officer, incorporated in the otherwise admissible report of another officer, are admissible under Evidence Code section 1280 in an administrative hearing to establish whether a licensee was driving. (*McNary, supra,* at p. 695.) In rejecting competing case law, the court in *McNary* relied on *Gananian, supra,* 33 Cal.App.4th 634, in which the court determined that to qualify as an admissible exception to the hearsay rule within the meaning of Evidence Code section 1280, a declarant's personal observation is not always required. (*McNary, supra,* at p. 695.)[2]

Accordingly, a public employee's observations about a licensee's driving, incorporated into the report of a police officer who did not have personal knowledge of the licensee driving, were found admissible under the public employee records exception in an administrative hearing context. (*McNary, supra,* 45 Cal.App.4th at p. 695.) Therefore, those observations could be considered as competent evidence establishing that the licensee was driving the vehicle. (*Ibid.*) Hildebrand argues the present case is distinguishable because, unlike in *Gananian, supra,* 33 Cal.App.4th 634, where the observations were made by a police officer, the observations in this case were "made by a non peace officer." However, there is no principled reason for affording different treatment in the administrative hearing context to statements made in their official capacities by police officers, firefighters, or similar public safety officials charged with duties relating to public safety and duly reported to and by each other. We draw this conclusion from Evidence Code sections 1280 and 195. The public employee records exception is not limited to police officers. (See Evid. Code, § 1280, subd. (a) ["within the scope of duty of a public employee"].) " 'Public employee' means an officer, agent, or employee of a public entity." (Evid. Code, § 195.) Moreover, the rationale of *Fisk v. Department of Motor Vehicles* (1981) 127 Cal.App.3d 72 [179 Cal.Rptr. 379], applies here: "[T]he essential 'circumstantial probability of trustworthiness' justifying the common law exception to the hearsay rule for official statements 'is related in its thought to the presumption that public officers do their duty. When it is a part of the *duty of a public officer* to make a statement as to a fact coming within his official cognizance, the great probability is that he does his duty and makes a correct statement . . . . The fundamental circumstance is that an official duty exists to make an accurate statement, and that this special and weighty duty will usually suffice as a motive to incite the officer to its fulfillment . . . . It is the influence of the official duty, broadly considered, which is taken as the sufficient element of

---

[2] Neither party cited this appellate district's case *McNary v. Department of Motor Vehicles, supra,* 45 Cal.App.4th 688.

trustworthiness, justifying the acceptance of the hearsay statement.' [Citation.]" (*Fisk, supra,* 127 Cal.App.3d at pp. 78–79.)

■ These principles are applicable to this case. In reporting his personal observations to the reporting police officer, Captain Uzdavines was acting pursuant to his duty as a fire captain to observe the facts and report them correctly. Because Hildebrand's vehicle, which was stuck on the train tracks, presented a serious danger to himself and others, Uzdavines as the first to respond had a duty to make sure Hildebrand was extricated from the vehicle and to notify the proper authorities—this was classic public safety activity. Hildebrand offered no contrary evidence. Nor did he offer any evidence to suggest that Uzdavines was not performing his duty at that time. Accordingly, both of Samoncik's reports of these events qualified as admissible public employee records even to the extent that they reported Uzdavines's observations. This constituted adequate proof that Hildebrand was, in fact, driving.

## C. Government Code Section 11513 Hearsay Principles

Even if Captain Uzdavines's hearsay statements were considered to be inadmissible under Evidence Code section 1280 to establish that Hildebrand was driving, we next determine whether Uzdavines's observations may be admitted to supplement or explain Hildebrand's own admissions.

■ Under Government Code section 11513, subdivision (d), evidence in an administrative hearing may include "[h]earsay evidence . . . . for the purpose of supplementing or explaining other evidence . . . ." Contained in Samoncik's unsworn arrest report, in addition to other statements, is Hildebrand's admission he was driving. In response to the question "where are you going," he answered "home." In giving his "explanation for driving" and why he became lodged on the tracks, he told Samoncik he "took a wrong turn." Hildebrand now contends there is ambiguity as to the meaning of the responses and who made the statements. However, those questions and answers are found under the arrest report form's heading "interview," and thus, Hildebrand's statements are excepted from the hearsay rule as party admissions. (Evid. Code, § 1220.) Any ambiguity of the meaning of those statements was properly clarified through the admission of evidence to supplement or explain Hildebrand's admissions. (Gov. Code, § 11513, subd. (d).) This included Uzdavines's observations of the circumstances of the discovery of Hildebrand's car on the tracks. Accordingly, those observations are admissible under Government Code section 11513, subdivision (d) to "supplement[] or explain[]" Hildebrand's own admissions.

In sum, we conclude the record adequately supports the trial court's implied finding that Hildebrand was driving. Fire Captain Uzdavines's reported observations were properly admitted and considered in the administrative hearing because (i) Samoncik's Officer's Statement and unsworn arrest report qualified as admissible public employee records even to the extent that they reported Uzdavines's observations and (ii) Hildebrand's admissions recounted therein come within the party admission exception to the hearsay rule, thereby permitting the introduction of the other evidence (Uzdavines's observations) to explain and supplement his admissions about driving.

### III

### *SUFFICIENT EVIDENCE WAS PRESENTED TO SUPPORT THE TRIAL COURT'S FINDING THAT HILDEBRAND REFUSED A CHEMICAL TEST*

Hildebrand next contends insufficient evidence was presented to establish that he was properly admonished about his choice of a blood or breath test before any of the tests were administered, or before he refused to complete a test. However, Hildebrand's contention has no merit.

■ "[T]he law of implied consent mandates that an arrestee is required to submit to and complete one of the three tests upon their first having been offered to him by an arresting officer. [¶] . . . [¶] . . . It is the initial refusal which forms the basis for suspension of the driver's license under Vehicle Code section 13353. [Citation.] Once the driver refuses to take any one of the three chemical tests, the law does not require that he later be given one when he decides, for whatever reason, that he is ready to submit. [Citations.] [¶] . . . Simply stated, one offer plus one rejection equals one refusal; and, one suspension." (*Dunlap v. Department of Motor Vehicles* (1984) 156 Cal.App.3d 279, 283 [202 Cal.Rptr. 729], italics omitted; see *People v. McHugh* (2004) 119 Cal.App.4th 202, 212 [14 Cal.Rptr.3d 142] (*McHugh*).)

Here, prior to completing or attempting any test, Officer Samoncik told Hildebrand that he had a choice of tests—"Mr. Hildebrand chose a breath test but was unable to complete the test." After the failed test, Samoncik read him the admonishment about implied consent. Hildebrand argues that he was not "warned that his failure to provide an adequate breath sample or his failure to complete one of the required tests would result in the suspension of his driving privileges until *after* he had attempted to complete one of the tests at the direction of the arresting officer." He argues this delay in admonishment undermines any refusal finding. However, Officer Samoncik was required only to inform Hildebrand that he had a choice of tests to take, prior to administering any test, and Samoncik did inform Hildebrand of this choice.

(*McHugh, supra*, 119 Cal.App.4th at pp. 211–212.) Hildebrand understood a test was required and made several attempts but failed to complete the breath test. Officer Samoncik then read the refusal admonishment to Hildebrand. This reasonably satisfied the purpose of the required admonishment as there was no need to repeat it for each test. Hildebrand cannot show Samoncik misinterpreted his responses to the testing request. (See *Payne v. Department of Motor Vehicles* (1991) 235 Cal.App.3d 1514, 1517–1518 [1 Cal.Rptr.2d 528].)

Hildebrand nevertheless claims that Officer Samoncik was obligated to offer him, after the failed breath test, a new choice of tests. His theory appears to be that when he then refused the blood test, he was actually choosing a breath test again. Alternatively, he did not refuse "all chemical tests." These interpretations are not supported by the record. Hildebrand chose to take a breath test. When the breath test was offered, it was outside Officer Samoncik's knowledge that Hildebrand apparently would not cooperate and would intentionally frustrate the officer's administration of the test. When Samoncik asked again, Hildebrand then said, "You got what you got now let me go!" and continued to object. The officer could reasonably interpret this as a refusal to complete any offered tests.

Accordingly, substantial evidence supports the trial court's finding that Hildebrand refused a chemical test because Hildebrand was required to submit to and complete one of the three tests after he was offered a choice of tests, but did not do so voluntarily.

██ Finally, the Supreme Court recently resolved the issue that proof of *actual* driving is not an essential element of an implied consent license suspension case. In *Troppman v. Valverde* (2007) 40 Cal.4th 1121 [57 Cal.Rptr.3d 306, 156 P.3d 328], the Supreme Court decided that a person's driver's license may be suspended under section 13353 for refusal to take or complete a chemical test as required by the "implied consent" statute (see § 23612), without proof being required that the licensee was actually driving at the time of the alleged offense. Hildebrand only claims that there is insufficient evidence to establish he refused a chemical test after being told he had a choice of tests, but the record is to the contrary. In any case, there is ample evidence in the record showing the arresting officer had reasonable cause to believe Hildebrand was driving the vehicle while under the influence of alcohol. The trial court correctly denied Hildebrand's petition.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to DMV.

McIntyre, J., and O'Rourke, J., concurred.