[Civ. No. 48733. First Dist., Div. Two. Jan. 16, 1981.]

LLOYD FRANKLIN BUTLER, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and
Respondent.

COUNSEL

Jack C. Hamson for Plaintiff and Appellant.

George Deukmejian, Attorney General, and Gail Y. Norton, Deputy Attorney General, for Defendant and Respondent.

OPINION

**THE COURT.\***—Lloyd Franklin Butler appeals from a judgment denying his petition for a writ of mandate (Code Civ. Proc., § 1094.5) by which he had sought review of a Department of Motor Vehicles order suspending his driving privilege for refusal to submit to, or failure to complete, a chemical test for blood-alcohol content under California's implied consent law (Veh. Code, § 13353). Appellant contends that the arresting officer did not afford him his statutory right to choose among alternative chemical tests. We conclude that the record refutes appellant's position as a matter of law. Therefore we affirm.

The arresting officer (Tonelli) and another officer found appellant in his automobile, injured and apparently under the influence of intoxicat-

---

*Before Taylor, P. J., Miller, J., and Smith, J.

ing liquor. The officers decided not to administer field sobriety tests; instead they arrested appellant and transported him to a hospital. En route Tonelli advised appellant of his rights and obligations under the implied consent law, giving him his choice of a chemical test of his blood, his breath, or his urine. Appellant said that he understood: He stated that he could not urinate, that he did not trust the breath-analysis instrument, and that therefore he wanted a blood test. At the hospital appellant was asked to sign a "consent to blood test," prepared by the hospital staff, which read as follows: "I, the undersigned, do hereby consent to the withdrawal of a blood sample from my body and do hereby further acknowledge that I have been advised that I have my choice of submitting to a test of either my blood, breath or urine and that I have selected the blood test. I further certify that I am not a person who is afflicted with hemophilia or a person who is afflicted with a heart condition using an anticoagulant under the direction of a physician."

Appellant refused to sign this form, although he apparently did sign consent forms for medical treatment. Consistent with the hospital's procedures at that time, hospital personnel would not take a blood sample from appellant without first obtaining his signature on the consent form. Appellant never specifically said that he would not take a blood test.

Tonelli reported to the Department of Motor Vehicles that appellant had refused to submit to, or had failed to complete, a chemical test. The department ordered appellant's driving privilege suspended. Appellant demanded and received a formal hearing before a department referee; following the hearing the department issued its order implementing the previously ordered suspension. Appellant then sought review by administrative mandamus.

The implied consent law provides that a person who drives a motor vehicle upon a highway and who has been lawfully arrested upon reasonable cause to believe that he was driving while under the influence of intoxicating liquor and has been admonished as to the provisions of Vehicle Code section 13353 shall be required, upon penalty of suspension of his driving privilege, to select, submit to, and complete one of three specified chemical tests to determine the alcoholic content of his blood. The law also provides: "If the person arrested either is incapable, or states that he is incapable, of completing any chosen test, he shall then have the choice of submitting to and completing any of the re-

maining tests or test, and he shall be advised by the officer that he has such choice."

■ Appellant contends that his refusal to sign the hospital's "consent to blood test" form, and the hospital's consequent refusal to administer the blood test, rendered him "incapable...of completing" the blood test within the meaning of the implied consent law, that he was therefore entitled to a second choice and to be so advised, and that the record does not sufficiently show that Tonelli so advised him.

Appellant's argument founders on his premise that the record, uncontradicted in this respect, demonstrates that he was "incapable" of completing the blood test.

The provision permitting an individual "incapable" of completing a chosen test an opportunity to make another choice contains neither a definition of "incapable" nor any indication that the word has anything other than its common or ordinary meaning. (Cf. 58 Cal.Jur.3d, Statutes, § 123, pp. 515-516.) In common parlance "incapable" means simply "lacking capacity, ability, or qualification" (cf., e.g., Webster's New Collegiate Dict. (1977) p. 579): The word normally connotes a *physical* or *intellectual* limitation such as, for relevant example, hemophilia in one asked to give a blood sample. The word does *not* connote a voluntarily self-imposed limitation. A conclusion that the word "incapable" was used in the implied consent law in its general and commonly understood sense is consistent with the general policy underlying the statute (cf. 58 Cal.Jur.3d, *loc. cit. supra*): The implied consent law is intended "to obtain the best evidence of blood alcohol content at the time of the arrest" (*Kesler* v. *Department of Motor Vehicles* (1969) 1 Cal.3d 74, 77 [81 Cal.Rptr. 348, 459 P.2d 900]) by means of securing "the *civil* cooperation of all persons privileged to drive" (*McDonnell* v. *Department of Motor Vehicles* (1975) 45 Cal.App.3d 653, 662 [119 Cal.Rptr. 804]): A construction of the word "incapable" broad enough to enable drivers to delay and obstruct chemical tests by declining without explanation to meet reasonable conditions incident to the tests would soon undercut these purposes.

The hospital's consent-form condition is wholly reasonable: The crux of the form is an acknowledgment that the driver has been advised of his choice of tests and that he is *not* physically incapable of taking the test. The form represents a sensible precaution from the hospital's standpoint and imposes no significant additional onus on the driver.

It has also been held, consistent with the purpose of the implied consent law, that a driver who has some specific and potentially valid objection to all or any part of the procedure involved in a particular chemical test must articulate that objection. (*Wegner* v. *Department of Motor Vehicles* (1969) 271 Cal.App.2d 838, 841 [76 Cal.Rptr. 920].) Appellant gave no reason at all for refusing to sign the form. So far as appears his refusal was wholly arbitrary.

We conclude that the record contains no support for appellant's contention that he was, or stated that he was, incapable of taking the blood test. Our conclusion makes it unnecessary for us to consider appellant's remaining contentions.

The judgment is affirmed.