[No. A029725. First Dist., Div. Four. Mar. 28, 1986.]

TIM G. SMITH, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

**COUNSEL**

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Harold W. Teasdale and Edward P. Hill, Deputy Attorneys General, for Defendant and Appellant.

Jack L. Ferguson for Plaintiff and Respondent.

**OPINION**

**SABRAW, J.**—The issue decided in this case is that a police officer has not exceeded his authority under the implied consent law by determining with respect to a driver arrested for driving under the influence of alcohol that it was feasible to administer only one of the three chemical tests—the blood test—because of the driver's injuries and apparent need for medical attention.

The Department of Motor Vehicles (hereinafter DMV) appeals from a judgment granting the petition of Tim Smith for issuance of a peremptory writ of mandate directing the DMV to set aside its order suspending Smith's driving privilege for six months based on his refusal to submit to a blood test following his arrest for driving while under the influence of alcohol. (Veh. Code, § 13353.)[1] We reverse.

### I. FACTS AND PROCEDURE

While driving his automobile, Smith was involved in a nighttime accident. An officer of the California Highway Patrol who responded to the accident call found the injured Smith within his vehicle pinned against a telephone pole such that the assistance of the fire department was required to pry the vehicle open to remove him. The officer detected a strong odor of alcohol

---

[1]All statutory references are to the Vehicle Code.

on Smith's breath and noted that his eyes were bloodshot and watery and his speech was incoherent. Observing that Smith had suffered lacerations, contusions and considerable loss of blood, the officer summoned an ambulance to the scene of the accident. The officer did not administer a field sobriety test due to Smith's possible injuries.

On arrival at the hospital emergency room, Smith was placed on a gurney and a cervical collar was placed around his neck. When the officer arrived at the hospital shortly thereafter he spoke to Smith and again detected a strong odor of alcohol, slurred speech and watery red eyes. The officer formed the opinion that Smith was under the influence of alcohol and advised Smith that he was under arrest for driving while under such influence.

The officer next advised Smith that he was required to submit to one of three chemical tests: blood, breathalizer, or a urinalysis to determine the alcohol content of his blood. Medical personnel would not allow Smith to get off the gurney to provide a urine sample for the officer. Based on that admonition and Smith's apparent condition, the officer determined that it was inappropriate and unsafe to allow Smith to get off the gurney for a urinalysis to be completed. In the officer's opinion, the only available chemical test which was feasible for Smith to take was the blood test.

The patrolman then explained to Smith that, because he was required by law to submit to a chemical test under circumstances where the extent of his injuries had not yet been determined, the only test that was feasible to administer at that point was the blood test; if he refused or failed to complete the blood test, his driving privilege would be suspended. Smith declined to complete the blood test. After giving Smith a reminder of the consequences of his refusal, the officer left the hospital.

The DMV later instituted administrative proceedings culminating in the suspension of Smith's driving privilege. Smith requested a hearing pursuant to section 13353, subdivision (c). Based upon the referee's finding that Smith had improperly refused to submit to a chemical test, the DMV ordered Smith's driving privilege suspended for six months.

Smith filed a petition for writ of mandate. Upon review, the trial court ordered a peremptory writ of mandate commanding the DMV to reissue to Smith his driver's license and to set aside the order of suspension.

## II. ANALYSIS

The DMV contends that the trial court erred in granting a writ of mandate and argues that the highway patrolman correctly chose not to offer Smith a

choice between taking a blood test and a urine test because the officer properly determined it was not feasible for Smith to take anything other than a blood test under the facts of this case.

■■ ■■■ We first note the appropriate standard of review. If the decision of an administrative agency will substantially affect a "fundamental vested right,"[2] the trial court in an administrative mandate proceeding must not only examine the administrative record for errors of law, but also must exercise its independent judgment upon the evidence. (*Berlinghieri* v. *Department of Motor Vehicles, supra,* 33 Cal.3d 392, 398.) ■ On appeal, we are left with the task of determining whether there is substantial evidence in the record to support the trial court's judgment on the revocation issue. (*McConville* v. *Alexis* (1979) 97 Cal.App.3d 593, 598 [159 Cal.Rptr. 49].)

■ As one of the measures designed to attack the problem of drunk driving, the Legislature enacted the implied consent law which provides that "a person who drives a motor vehicle upon a highway and who has been lawfully arrested upon reasonable cause to believe that he was driving while under the influence of intoxicating liquor and has been admonished as to the provisions of . . . section 13353 shall be required, upon penalty of suspension of his driving privilege, to select, submit to, and complete one of three specified chemical tests to determine the alcoholic content of his blood." (*Butler* v. *Department of Motor Vehicles* (1981) 115 Cal.App.3d 913, 915 [171 Cal.Rptr. 525].)[3] "The implied consent law is intended 'to

[2]The right to retain a drivers license, once issued, is a fundamental right for purposes of selecting the standard of judicial review of an administrative decision to suspend or revoke such license. (*Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392, 398 [188 Cal.Rptr. 891, 657 P.2d 383].)

[3]At the time of Smith's arrest, the implied consent law was found in section 13353 and provided, in relevant part:

"(a)(1) Any person who drives a motor vehicle shall be deemed to have given his or her consent to chemical testing of his or her blood, breath, or urine for the purpose of determining the alcoholic content of his or her blood . . . if lawfully arrested for any offense allegedly committed in violation of Section 23152 or 23153. The testing shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe the person was driving a motor vehicle in violation of Section 23152 or 23153. The person shall be told that his or her failure to submit to, or the noncompletion of, the required chemical testing will result in the suspension of the person's [driving privilege].

"(a)(2)(A) If the person is lawfully arrested for driving under the influence of an alcoholic beverage, the person shall have the choice of whether the test shall be of his or her blood, breath, or urine, and the person shall be advised by the officer that he or she has such a choice. If the person arrested either is *incapable*, or states that he or she is incapable, of completing any chosen test, the person shall have the choice of submitting to and completing any of the remaining tests or test, and the person shall be advised by the officer that the person has that choice.

[Subsection (a)(2)(B) omitted.]

"(a)(3) If the person is lawfully arrested for an offense allegedly committed in violation

obtain the best evidence of blood alcohol content at the time of the arrest' (*Kesler* v. *Department of Motor Vehicles* (1969) 1 Cal.3d 74, 77 [81 Cal.Rptr. 348, 459 P.2d 900]) by means of securing 'the *civil* cooperation of all persons privileged to drive' (*McDonnell* v. *Department of Motor Vehicles* (1975) 45 Cal.App.3d 653, 662 [119 Cal.Rptr. 804]). . . ." (*Id.,* at p. 916.)

■ Under section 13353, all drivers must be given a choice of a blood test, a breath test, or a urinalysis. However, the Legislature restricted the arrestee's choice when an arrestee is incapable or states he is incapable of performing any chosen test (§ 13353, subd. (a)(2)(A)) or if it is necessary to transport the arrestee to a medical facility for treatment and it is not feasible to administer a particular test. (§ 13353, subd. (a)(3).) In either case, the arrestee's choice is limited to those tests which are both feasible and available. (§ 13353, subds. (a)(2)(A), (a)(3).) In common parlance the words "not feasible" mean simply "unreasonable" or "unsuitable." (Webster's New Collegiate Dict. (1973) p. 415.)

The DMV relies on three cases (*Butler* v. *Department of Motor Vehicles, supra,* 115 Cal.App.3d 913; *Buchanan* v. *Department of Motor Vehicles* (1979) 100 Cal.App.3d 293 [160 Cal.Rptr. 557]; and *McConville* v. *Alexis, supra,* 97 Cal.App.3d 593) to demonstrate that broad discretion is given to law enforcement officers in complying with section 13353. We find these cases instructive.

In *Butler,* the arresting officer gave the arrestee the choice of all three chemical tests—breath, blood and urinalysis. The arrestee chose the blood test, but refused to sign the hospital's internal waiver form. As a result, the hospital would not administer the test. The court held that the officer acted within his discretion when he concluded that the arrestee was incapable of performing the blood test within the meaning of section 13353. In *Buchanan,* the arresting officer again gave the arrestee the choice of all three chemical tests. The officer stated that they would soon be passing by the hospital and that, if the arrestee opted for the blood test, he was required to indicate his choice prior to passing the hospital. The arrestee waited until they arrived at the police station to indicate he wanted the blood test. The Court of Appeal held the arresting officer's conclusion that the arrestee was

---

of Section 23152 or 23153, and, because of the need for medical treatment, the person is first transported to a medical facility where it is not feasible to administer a particular test of, or to obtain a particular sample of, the person's blood, breath, or urine, the person has the choice of those tests which are available at the facility to which that person has been transported. In such an event, the officer shall advise the person of those tests which are available at the medical facility and that the person's choice is limited to those tests which are available." (Stats. 1982, ch. 1341, § 4, pp. 5004-5005, italics added.)

The implied consent law was recently reenacted as section 23157. (Stats. 1985, ch. 1330, § 3.)

incapable of performing a blood test to be proper under such circumstances. Finally, in *McConville,* after the arresting officer gave the arrestee all three choices of chemical test, the arrestee chose urinalysis. He completed the first part of the test by voiding his bladder, but when it came time to provide the second sample 20 minutes later, he was unwilling to comply. Again, the court found the officer's determination that the arrestee was incapable of performing the chosen test to be proper.

In all three of the foregoing cases, it was necessary for the officer to determine if it was feasible for an arrestee to perform a particular test or if the arrestee was capable of performing a chosen test. Based on prudent judgment and common sense in each case, the officer determined that the arrestee was incapable of performing the chosen test or that it was not feasible for the arrestee to perform a particular test.

Under the facts of this case, Smith was lying on a gurney with a cervical collar affixed to his neck, he was the subject of potentially serious injuries, and a member of the hospital staff had stated that Smith would not be allowed off the gurney. The officer then determined that it would not be feasible for Smith to get off the gurney in order to provide a urine sample.

The procedure for completing the urine test requires the arrestee to provide two urine samples with an interval of no less than 20 minutes between the samples. (Cal. Admin. Code, tit. 17, § 1219.2; *Miles* v. *Alexis* (1981) 118 Cal.App.3d 555, 559 [173 Cal.Rptr. 473].) In light of Smith's undiagnosed injuries, the officer was in no position to offer Smith a urine test.

Finally, Smith claims that the officer's determination it was not feasible to perform a urine test was unreasonable because the officer, in making this determination, did not inquire with medical staff at the hospital as to whether such a test was feasible. We find this argument unpersuasive. The statute confers the duties and responsibilities of administering the chemical test upon the peace officer. (§ 13353, subd. (a)(1).) In fact, time is of the essence in conducting any chemical test for blood alcohol. (*McConville* v. *Alexis, supra,* 97 Cal.App.3d 593, 602.) Here, the officer was previously informed by the hospital staff that Smith could not get off the gurney to provide a urine sample.

Under the circumstances presented in our case, the law enforcement officer used prudent discretion in determining that it was not feasible for Smith to perform any chemical test other than the blood test and thus properly limited Smith's choice to the blood test as the only safe choice available. We conclude the trial court's decision to set aside DMV's order suspending Smith's license was not based on substantial evidence.

The judgment is reversed.

Anderson, P. J., and Poché, J., concurred.