[No. B226241. Second Dist., Div. Four. June 15, 2011.]

LINDA WHITE, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

COUNSEL

Baric Minesinger and Steven D. Baric for Plaintiff and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Alicia M. B. Fowler, Assistant Attorney General, Celine M. Cooper, Dana T. Cartozian, Judith R. Seligman and Lorinda D. Franco, Deputy Attorneys General, for Defendant and Respondent.

Opinion

**EPSTEIN, P. J.**—The issue in this appeal from denial of an administrative mandate petition (Code Civ. Proc., § 1094.5) is whether the driver of a motor vehicle refused to take a chemical test as required by Vehicle Code section 13353.[1] The trial court upheld the decision of the Department of Motor Vehicles (DMV), made after an administrative hearing, that there had been a refusal. The facts indicate that the driver selected a blood test, and refused a breath test both before the blood test was attempted and after it appeared that the blood test could not be properly administered, and a breath test was again offered. We conclude the trial court ruled correctly, and affirm.

## FACTUAL AND PROCEDURAL SUMMARY

There is no dispute over the facts underlying the arrest in this case. California Highway Patrol (CHP) Officer Adrian Ayala stopped a vehicle driven by appellant Linda White because the car's headlamps were not on and it was nighttime. On approaching the vehicle, the officer observed signs that the driver was under the influence of alcohol. He directed her to exit the vehicle, then performed some field sobriety tests and preliminary alcohol screening tests. Satisfied that Ms. White was under the influence of alcohol, he arrested her. Officer Ayala and his partner, Officer Jeremy Welch, then transported her to the CHP central office in Los Angeles. Officer Ayala read appellant an admonition explaining that she was required to submit to a chemical test to determine whether she was under the influence, and that she had a choice of a breath test or a blood test. Addressing the breath test, Ms. White asked, "Is this the one I'm supposed to refuse?" She refused the breath test, in the field and at the CHP office. She said that she would take a blood test.

The officers then transported her to the 77th Street station of the Los Angeles Police Department, where a blood test could be administered; the CHP office was not equipped to administer that test.

There is some disparity about specifics with respect to administration of the blood test at the 77th Street station.

Ms. White testified that she was taken to what she thought was a holding area, where a technician entered the room and proceeded to attempt to draw blood from her arm. The technician started with the left arm, tying a tourniquet and tapping in an attempt to find a vein from which blood could be drawn. While doing so, the technician was "mumbling to herself" and was

[1] All statutory references are to the Vehicle Code unless otherwise indicated.

"very agitated." The technician said she did not understand why she had to do this, and that the "other person should have been doing this." This first effort was unsuccessful, as the technician could not find a vein. The technician then untied the tourniquet and tied it on Ms. White's *right* arm, and again tried to draw blood. This time she penetrated Ms. White's arm with the needle but, after several penetrations, was unable to draw blood into the syringe. Ms. White asked the officers who were standing in the room to tell the technician to stop, because "[s]he's really hurting me." The technician did stop, placed gauze on Ms. White's right arm, and left the room.

Officer Ayala's testimony was similar. Once at the 77th Street station dispensary, after Ms. White had refused a breath test, the technician entered the room for the blood test. She "appeared to be doing a very poor job and—kept like poking and kind of mooshing around trying to find the vein." After a few minutes the technician announced that she could not find a vein and could not complete the test. The technician only tried one arm; she did not try one, then the other. The officer testified that "there was no blood coming out, so I saw her like moving the needle around while pretty much it's in her arm. . . . And after a couple minutes, she said that she couldn't find it and offered to do the other arm, at which time we said that that's not going to be necessary. It appeared that Ms. White had been through some—quite a bit of discomfort trying to do it the first time, so we didn't feel that was appropriate." The technician made a statement about trying the other arm. But the officers did not believe it appropriate to "injure her [(i.e., Ms. White)] any further."

Officer Ayala contacted his supervising sergeant for directions on what to do next. He returned and again offered Ms. White a breath test, warning that refusal to take the test would result in her driver's license being suspended. Ms. White again refused the breath test.

Officer Ayala's partner, Officer Welch, testified at a continued session of the administrative hearing. He did not recall most of the evidence, such as whether Ms. White said she would not take a breath test or if she would not take a blood test, although he also testified that she refused a breath test several times. He testified that after several attempts to draw blood, the technician said "she" did not want to continue. It is unclear whether the "she" referred to is the technician or Ms. White. Later the officer said that as far as he remembered, Ms. White said, "Okay, that's it, I'm not doing anymore," but he could not be sure, because his "memory is a little fuzzy."

Officer Ayala repeatedly offered Ms. White a breath test during the course of the events preceding and following her arrest until the attempt to take the blood test ended. After the unsuccessful blood test, he offered the breath test

again, and Ms. White again refused to take it, even after being told (again) that refusal would result in suspension of her driving privileges. Ms. White denied being offered the breath test after the attempted blood testing ended and said that, if she had been offered the breath test at that point, she would have taken it or taken another blood test.

The trial court credited Officer Ayala's testimony where it differed from that of Officer Welch and Ms. White. In resolving those conflicts, the trial court exercises independent judgment. (*Berlinghieri v. Department of Motor Vehicles* (1983) 33 Cal.3d 392, 398 [188 Cal.Rptr. 891, 657 P.2d 383].) But on appeal, we uphold the trial court's rulings so long as they are supported by substantial evidence in the record. (*Robertson v. Zolin* (1996) 44 Cal.App.4th 147, 152 [51 Cal.Rptr.2d 420]; *Garcia v. Department of Motor Vehicles* (2010) 185 Cal.App.4th 73, 82 [109 Cal.Rptr.3d 906].)

Following an administrative hearing and finding that Ms. White had refused a chemical test to determine her blood-alcohol level when driving a vehicle, DMV suspended her license to drive a motor vehicle for one year. The trial court denied Ms. White's petition for mandate, following which she filed a timely notice of appeal.

## DISCUSSION

Section 23612 is the California implied consent law. It provides that a person lawfully arrested for driving a motor vehicle while under the influence of alcohol impliedly consents to submit to a chemical test, by breath or blood, to determine his or her blood-alcohol level while driving the vehicle.[2] "If the person arrested either is incapable, or states that he or she is incapable, of completing the chosen test, the person shall submit to the remaining test." (§ 23612, subd. (a)(2)(A).) Section 13353 provides for suspension of driving privileges where the driver refuses to submit to the test.

The issue in this case is whether a refusal occurs where the driver elects a blood test and cooperates in taking the test, but efforts to administer that test are unsuccessful, and the driver refuses to take a breath test. A leading case, *Smith v. Department of Motor Vehicles* (1986) 179 Cal.App.3d 368, 375 [224 Cal.Rptr. 543] (*Smith*), considered whether the peace officer exercised reasonable discretion in deciding whether it was feasible to administer a chemical test. In that case, the driver was involved in an automobile accident. An officer at the scene observed signs of intoxication: the odor of alcohol on the

[2] Formerly, the driver was given a choice of three tests—blood, breath, or urine—but the statute was amended in 1998 to restrict the urine option to cases where neither a blood nor a breath test is available. (§ 23612, subd. (d)(2); Stats. 1998, ch. 740, §4, p. 4856.)

driver's breath, bloodshot and watery eyes, and incoherent speech. Due to the driver's injuries, an ambulance was summoned, and the driver was taken to a hospital emergency room. The officer, arriving there, noticed the same signs of intoxication, and informed the driver that he was under arrest for driving under the influence of alcohol. The officer advised the driver of his choice of three tests—blood, breath, or urine—to determine his blood-alcohol level. Due to the driver's condition—confined to a gurney and unable to get up—the urine test was infeasible, as was a breath test. The defendant failed to take or complete a blood test, the only test available. (*Id.* at p. 372.) The trial court granted the driver's administrative mandamus petition, but the appellate court reversed: "Under the circumstances presented in our case, the law enforcement officer used prudent discretion in determining that it was not feasible for [the driver] to perform any chemical test other than the blood test and thus properly limited [his] choice to the blood test as the only safe choice available. We conclude the trial court's decision to set aside DMV's order suspending [the driver's] license was not based on substantial evidence." (*Id.* at p. 375.)

The trial court applied the same analysis in this case. Like *Smith*, the court relied on the officer's discretion under the statute: "Chemical testing for blood alcohol content, incidental to an arrest, is to be administered at the direction of a peace officer. (Veh. Code, §23612, subd. (a)(1)(C).) The peace officer under whose direction the testing is being administered has the discretion to determine whether a particular chemical test is available." The court credited evidence that Officer Ayala repeated the admonition, previously given to Ms. White, that she had to submit to a chemical test, and that the only test available was a breath test. He did so after conferring with his sergeant and receiving that advice. Ms. White's refusal to submit to a breath test at that point was a refusal under the statute.

Ms. White argues that the blood test was frustrated by the ineptness of the technician, and that this circumstance should not prevent her from insisting on her test of choice. There is dicta in some cases suggesting that this is a tenable reading of the statute. (See *Ross v. Department of Motor Vehicles* (1990) 219 Cal.App.3d 398, 402 [268 Cal.Rptr. 102], quoting *Wegner v. Department of Motor Vehicles* (1969) 271 Cal.App.2d 838, 841 [76 Cal.Rptr. 920].) But neither case holds that this is the correct reading of the law, and in each the court found insufficient support in the record for the argument presented. We believe the suggestion there, and the argument here, would do violence to the purposes of the implied consent law.

Those purposes relate to public safety, in particular to the hazards presented to lives and property by driving under the influence on a public highway. (See *Hernandez v. Department of Motor Vehicles* (1981) 30 Cal.3d

70, 76 [177 Cal.Rptr. 566, 634 P.2d 917] [implied consent law is "perhaps a paradigm example of a classic 'health and safety' police power measure, clearly enacted by the Legislature to foster the safety of the public in the use of the state's highways"].) Here, Ms. White was proceeding on a highway at night and, if under the influence of alcohol as the arresting officer reasonably believed, presented a serious hazard to anyone and anything within range of her vehicle. She rejected a breath test, believing that that was the one to which she should not consent, and opted for a blood test. The officers complied with her request and took her to a police station where that test could be administered. For whatever reason (and certainly not by design of the government or the result of any fault on the part of the officers, the arresting agency, or Ms. White) that test could not be administered. Inability to perform it left one test available: the breath test. That test was again offered to Ms. White, with an admonition of the consequence of a refusal. She again refused it, nevertheless. In doing so, she placed herself within the ambit of the sanction required under the implied consent law: her license was suspended. We find no error.

## DISPOSITION

The judgment is affirmed.

Willhite, J., and Manella, J., concurred.