Filed 9/6/16  Hixon v. Shiomoto CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b).  This opinion has not been certified for publication or ordered published for purposes of rule 977.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| HARVEY REGINALD HIXON, | B265509 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS150499) |
| v. | |
| JEAN SHIOMOTO, as Director, etc., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Luis A. Lavin, Judge.  Affirmed.

Michael S. Evans for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Chris A Knudsen, Assistant Attorney General, Celine M. Cooper and Venessa F. Martinez, Deputy Attorneys General, for Defendant and Respondent.

\* \* \* \* \* \* \* \*

Plaintiff Harvey Reginald Hixon appeals from the judgment denying his petition for writ of mandate which challenged the decision of defendant Jean Shiomoto, as Director of the Department of Motor Vehicles (DMV) to revoke his driver's license based on his refusal to submit to a chemical test following his arrest for driving under the influence (DUI).  Plaintiff contends the arresting officer did not have reasonable cause to believe that plaintiff violated any provision of the Vehicle Code, and therefore did not lawfully stop plaintiff.  Plaintiff also contends that he did not refuse to submit to a chemical test.  Finding no merit in either of these contentions, we affirm the judgment denying his petition.

## BACKGROUND

### I.    DUI Arrest

On April 16, 2014, at approximately 3:50 a.m., CHP Officer J. Gonzalez was patrolling West Los Angeles in a marked patrol car.  Officer Gonzalez noticed plaintiff's car driving northbound on Overland Avenue, in the right turn lane toward Interstate 10.  Plaintiff "straddle[d]" the number three lane for approximately 10 seconds.  Plaintiff then entered the number three lane and stopped at a red light.  When the light turned green, plaintiff continued northbound on Overland Avenue.  Plaintiff was driving "in a serpentine manner within" his lane.  As plaintiff approached Pico Boulevard, he again changed lanes, and then "straddled the solid yellow lines delineating the southbound lanes from the northbound lanes."  Officer Gonzalez initiated "an enforcement stop for the observed violations" and plaintiff pulled over at the corner of Overland and Tennessee Avenues.

When Officer Gonzalez contacted plaintiff, he noticed a strong odor of alcohol coming from plaintiff's car.  Plaintiff's eyes were red and watery, and his speech was slurred.  Officer Gonzalez asked plaintiff to exit his vehicle, and smelled a strong odor of alcohol coming from plaintiff's person.

Officer Gonzalez informed plaintiff that he would conduct a DUI investigation.  As Officer Gonzalez was asking his standard questions, plaintiff said he wanted to speak

with his lawyer, and that he would not participate in the investigation or perform any field sobriety tests.

Based on plaintiff's symptoms of intoxication, Officer Gonzalez placed him under arrest for driving under the influence of alcohol.

Officer Gonzalez informed plaintiff of his obligation to submit to a chemical test under Vehicle Code section 23612, the implied consent law. Plaintiff agreed to submit to a breath test. Officer Gonzalez transported plaintiff to the police station to complete a breath test and for booking. At 4:43 a.m., plaintiff was instructed to take a deep breath, and to blow in the breathalyzer. After several attempts, plaintiff was unable to provide a sufficient breath sample, and the breathalyzer "timed out." At 4:50 a.m., Officer Gonzalez again informed plaintiff to take a deep breath and blow into the breathalyzer. After several attempts, plaintiff was again unable to provide a sufficient breath sample. At 5:07 a.m., plaintiff again attempted to take a breath test, but was unable to provide a sufficient sample. Officer Gonzalez asked plaintiff if he would like to submit a blood sample. Plaintiff declined. Officer Gonzalez concluded that plaintiff had refused to test, and plaintiff was booked.

At the time of plaintiff's arrest, his driver's license was suspended and he was on probation for DUI. He had three prior DUI's.

## II. Administrative Proceedings

Officer Gonzalez issued an Administrative Per Se Suspension/Revocation Order and Temporary Driver's License to plaintiff. Plaintiff requested an administrative hearing to challenge the revocation of his driving privileges. At the hearing, Officer Gonzalez's DS-367 statement, the arrest report, and plaintiff's driving record were admitted as exhibits without objection. Plaintiff did not testify at the hearing.

During closing argument, plaintiff's counsel argued that Officer Gonzalez had not specified a Vehicle Code violation giving rise to the traffic stop. Counsel also argued that plaintiff did not refuse to test, and had tried to test several times.

On July 1, 2014, the hearing officer issued written findings and concluded Officer Gonzalez had reasonable cause to believe that plaintiff was driving in violation of

3

Vehicle Code section 23140, 23152, 23153 or 23154 (DUI). The hearing officer also concluded that plaintiff was lawfully arrested, admonished of the consequences of failing to submit to a chemical test, and he failed to complete a test. Plaintiff's license was revoked for three years pursuant to section 13353.1, subdivision (a)(3)(C).

## III. Writ Proceedings

Plaintiff filed a petition for administrative writ of mandate in the trial court seeking to overturn the DMV's revocation order. The trial court denied the writ petition, concluding that there was a reasonable basis for Officer Gonzalez to suspect that plaintiff was driving under the influence. The trial court also concluded that plaintiff had failed to complete a chemical test, and that this could be deemed a refusal. This timely appeal followed.

## DISCUSSION

In ruling on an application for a writ of mandate following an order of suspension or revocation, a trial court is required to determine, based on its independent judgment, " 'whether the weight of the evidence supported the administrative decision.' " (*Gananian v. Zolin* (1995) 33 Cal.App.4th 634, 638.) On appeal, we review the trial court's factual determinations for substantial evidence. (*Hoberman-Kelly v. Valverde* (2013) 213 Cal.App.4th 626, 631.) We review the trial court's legal determinations de novo. (*Roze v. Department of Motor Vehicles* (2006) 141 Cal.App.4th 1176, 1184.)

## I. Lawfulness of the Stop

Plaintiff contends the facts articulated by Officer Gonzalez's reports were insufficient to create a reasonable suspicion of wrongdoing to justify the stop. Specifically, plaintiff contends that Officer Gonzalez failed to cite any Vehicle Code violations in his reports.

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." (*United States v. Arvizu* (2002) 534 U.S. 266, 273.) Thus, "a police officer can legally stop a motorist *only* if the facts and circumstances

4

known to the officer support at least a reasonable suspicion that the driver has violated the Vehicle Code or some other law. [Citations.]" (*People v. Miranda* (1993) 17 Cal.App.4th 917, 926.)

Here, Officer Gonzalez's reports noted that plaintiff had straddled one lane, changed to the next lane, and travelled in serpentine manner in this lane, changed lanes again, and had straddled the median dividing line between northbound and southbound traffic. Although Officer Gonzalez did not cite any Vehicle Code violations as the basis for his stop, the conduct he observed plainly justified the stop.

It is well settled that "pronounced weaving within a lane provides an officer with reasonable cause to stop a vehicle on suspicion of driving under the influence where such weaving continues for a substantial distance." (*People v. Perez* (1985) 175 Cal.App.3d Supp. 8, 10 [stop justified by weaving for three-quarters of a mile]; see also *People v. Bracken* (2000) 83 Cal.App.4th Supp. 1, 3-4 (*Bracken*) [stop justified by weaving for approximately one-half mile].) Moreover, Vehicle Code section 21658, subdivision (a) provides that a "vehicle shall be driven as nearly as practical entirely within a single lane and shall not be moved from the lane until such movement can be made with reasonable safety." A violation of section 21658 occurs when a driver straddles a lane. (*People v. Butler* (1978) 81 Cal.App.3d Supp. 6, 7-8.)

Plaintiff argues that his driving did not constitute lane straddling in violation of Vehicle Code section 21658 under the holding in *U.S. v. Colin* (9th Cir. 2002) 314 F.3d 439 (*Colin*). Plaintiff also argues that he did not weave for an equivalent distance as the driver in *Bracken*, *supra*, and therefore reasons that Officer Gonzalez did not have a reasonable suspicion that he was driving under the influence. We are not persuaded.

In *Colin*, the officer watched the defendant's car drift onto the solid white fog line on the far side of the right lane, and watched the car's wheels travel along the fog line for approximately 10 seconds. The car then drifted to the left side of the right lane, signaled a lane change, and moved into the left lane. The officer next saw the car drift to the left side of the left lane, where its left wheel traveled along the solid yellow line for approximately 10 seconds. The car then returned to the center of the left lane, signaled a

5

lane change and moved back into the right lane. The officer stopped the car for violating the lane straddling statute, Vehicle Code section 21658, and on suspicion of drunk driving. (*Colin*, *supra*, 314 F.3d at pp. 441-442.)

The Ninth Circuit found the officer did not have a reasonable suspicion of wrongdoing to justify the stop. The court noted the car only *touched* the lines twice for a few seconds, before the driver made safe, signaled lane changes. (*Colin*, *supra*, 314 F.3d at p. 445.) Therefore, the court concluded that the defendant's conduct did not constitute a violation for lane straddling, finding that "[t]ouching a dividing line, even if a small portion of the body of the car veers into a neighboring lane, satisfies the statute's requirement that a driver drive as '*nearly as practical* entirely within a single lane.' Cal. Veh. Code § 21658(a)." (*Id.* at p. 444.) Moreover, the court found that the officer did not have a reasonable basis for suspecting that the defendant was driving under the influence, as the defendant did not demonstrate " 'pronounced weaving,' " and because the officer failed to conduct any field sobriety tests after stopping the defendant. (*Id.* at p. 446.) "This . . . convinces us that [the officer] did not harbor reasonable suspicion that [the defendant] was driving under the influence." (*Ibid.*)

Unlike the driver in *Colin*, plaintiff did not merely touch but actually *crossed over* lane boundaries, in violation of Vehicle Code section 21658. Also, Officer Gonzalez observed plaintiff's erratic driving for at least several blocks, and immediately instituted a DUI investigation upon stopping plaintiff. This is sufficient to support a reasonable suspicion that plaintiff may be driving under the influence. (*People v. Bracken*, *supra*, 83 Cal.App.4th Supp. at pp. 3-4; see also *Colin*, *supra*, 314 F.3d at p. 446.)

## II. Refusal

To combat drunk driving, the Legislature enacted the implied consent law. (Veh. Code, § 23612; *Smith v. Department of Motor Vehicles* (1986) 179 Cal.App.3d 368, 373.) The implied consent law provides that "a person lawfully arrested for driving a motor vehicle while under the influence of alcohol impliedly consents to submit to a chemical test, by breath or blood, to determine his or her blood-alcohol level while driving the vehicle." (*White v. Department of Motor Vehicles* (2011) 196 Cal.App.4th 794, 798.) "If

6

the person arrested either is incapable, or states that he or she is incapable, of completing the chosen test, the person shall submit to the remaining test." (§ 23612, subd. (a)(2)(A).) " 'The implied consent law is intended "to obtain the best evidence of blood alcohol content at the time of the arrest" [citation] by means of securing "the civil cooperation of all persons privileged to drive" . . . .' [Citation.]" (*Smith*, *supra*, at pp. 373-374, italics omitted.)

The DMV is required to suspend or revoke a person's driving privilege if the person "refuses the officer's request to submit to, *or fails to complete*, a chemical test or tests pursuant to [Vehicle Code] Section 23612" and the officer had reasonable cause to believe the person had been driving a motor vehicle in violation of section 23140, 23152 or 23153. (§ 13353, subd. (a), italics added.)

Plaintiff argues, without citing any authority, he "did not refuse to take a test." Plaintiff was afforded several opportunities to test and did not provide a sufficient sample to complete the tests. An unsuccessful attempt to complete a breath test amounts to a refusal. "Compliance with the implied consent law [citation] consists of completing, not merely attempting, one of the three blood alcohol content tests offered." (*Miles v. Alexis* (1981) 118 Cal.App.3d 555, 559.) "If the driver elects to take one of the three tests, he must complete the test or he will be deemed to have refused and failed to take it." (*Skinner v. Sillas* (1976) 58 Cal.App.3d 591, 598.)

## DISPOSITION

The judgment is affirmed. Respondent is awarded its costs on appeal.


GRIMES, J.

WE CONCUR:


RUBIN, Acting P. J.                    FLIER, J.


7