Filed 6/15/23  Tarzia v. Gordon CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JAMES TARZIA, | |
| Plaintiff and Appellant, | G060610 |
| v. | (Super. Ct. No. 30-2021-01186394) |
| STEVEN GORDON, as Director, etc., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, David A. Hoffer, Judge.  Reversed with directions.

Law Offices of Jonathan Reza and Jonathan Reza for Plaintiff and Appellant.

Rob Bonta, Attorney General, Chris A. Knudsen, Assistant Attorney General, Kenneth C. Jones and Bradley Parr, Deputy Attorneys General, for Defendant and Respondent.

James Tarzia appeals from a judgment denying his petition for writ of mandate to set aside the Department of Motor Vehicles' (DMV) suspension of his driver license. He argues the trial court erred in finding he refused to submit to an alternative chemical test of his blood alcohol content, after the arresting officer deemed his chosen chemical test "unavailable." We agree the court erred and reverse the judgment.

FACTS

The facts are undisputed. On a Friday morning around 2:39 a.m., Orange County (OC) Sheriff's Deputy Robert Derifield responded to a dispatch call about a vehicle parked at the drive-through entrance of a fast-food restaurant in San Clemente. Once at the scene, the deputy found Tarzia in the driver's seat of the car, slumped forward over the steering wheel, with his seatbelt fastened. The car's engine was running. The deputy noted that Tarzia smelled of alcohol, had an unsteady gait, and slurred his speech. Tarzia performed poorly on field sobriety tests, including a one-leg-stand test, a walk-and-turn test, and a horizontal gaze nystagmus test. He refused to take a preliminary alcohol screening test. The deputy lawfully arrested Tarzia for driving under the influence (DUI) of alcohol. (Veh. Code, § 23152.)[1]

Deputy Derifield recited the chemical test admonishment, pursuant to the implied consent law (§ 23612), which included telling Tarzia he was required to take a chemical test but had the choice of a breath or blood test. Tarzia agreed to a breath test, but the deputy did not have a device to administer it. Deputy Derifield asked other

---

[1] All further statutory references are to the Vehicle Code unless otherwise indicated.

officers[2] at the scene for an "EPAS"[3] or a "yellow box," a portable evidentiary alcohol breath test machine. They didn't have one either.

OC Sheriff's deputies receive training from the Orange County Crime Lab (the crime lab) on breath and blood testing. Deputy Derifield took such a course. Officers are informed that it is the driver's option to choose whether to submit to a breath or blood test, and that if they do not have a yellow box or it is not working properly, they "can call a different agency and ask to borrow an instrument or [call] somebody from their own agency and ask to borrow an instrument, because . . . they're meant to be able to be transported to a location as needed." Officers "are trained and instructed to make reasonable efforts to accommodate that choice of breath test," including "reach[ing] out to a neighboring agency or California Highway Patrol [(CHP)] . . . to ask to borrow the instrument to use[.]"

According to Deputy Derifield, there was a nearby branch or division in Dana Point, another in San Juan Capistrano, and a CHP field office also in San Juan Capistrano. All three locations were about a five-to-ten-minute drive from the scene. Deputy Derifield did not specifically contact any of them to check for a yellow box. He did not contact his supervisor or check with the Aliso Viejo substation, where he picked up his vehicle and equipment at the start of his shift.

Deputy Derifield did, however, "put a general broadcast over our specific radio channel to see if anybody had a yellow box[.]" Nobody responded.

Deputy Derifield determined he could not administer a breath test because he was "unable to locate" an evidentiary breath-test machine, and so informed Tarzia. He asked if Tarzia would take a blood test instead. Tarzia refused. The deputy advised, "If

---

[2]     Video from the patrol vehicle was admitted as an exhibit in the underlying proceedings. It shows three officers, including Deputy Derifield, at the scene.

[3]     An "EPAS" is used for an "evidentiary breath test." (*People v. Profitt* (2017) 8 Cal.App.5th 1255, 1260.)

3

you don't submit to a blood test, we're gonna get a warrant."[4] Tarzia asked why a breathalyzer wasn't available, and the deputy responded, "Cuz it's not available right now. They don't have a -- they don't have a breath machine."

Three minutes and twenty seconds had passed between the time Tarzia agreed to a breath test and the deputy's mention of a warrant for a blood test. For two of those three minutes and twenty seconds, the sound to Deputy Derifield's microphone was cut off. His radio call for a yellow box was not captured in the audio recording. The microphone and patrol vehicle are synced, and sometimes they "go in and out of sync." The deputy can also turn the microphone on and off; he didn't recall doing so but acknowledged it was possible that he did.

Deputy Derifield issued a sworn officer's statement indicating the "breath test [was] unavailable in area" and Tarzia had refused a blood test. The statement notified Tarzia that his license would be suspended or revoked 30 days from the issuance of the order and that he had 10 days to request a hearing.

At the requested hearing, known as an administrative per se hearing, Tarzia submitted a copy of Policy 514 of the OC Sheriff's Department, which provides in part: "Any person who is unable to submit to a chemical test due to any of the following conditions shall not be considered refusing to comply with the provisions of [ ] § 23612: [¶] 1. The Department is unable to furnish a selected test." Deputy Derifield testified that he had no reason to believe Tarzia would have refused to provide a breath sample, had a yellow box been available: "[Tarzia] elected to consensually provide one [a breath sample] and then once it [the yellow box] was unavailable, he became uncooperative." And a forensic scientist with the crime lab's forensic alcohol section testified that her organization tracks the number of yellow boxes assigned to the OC Sheriff's Department, which "as a whole[ ] has many instruments." She estimated that within the department, a

---

[4]        Deputy Derifield did eventually obtain a warrant to draw Tarzia's blood.

subagency would receive between one and five or six, depending on the size of the subagency and the average number of tests it performs. In her opinion, "if there is some effort put into it, you could get an instrument within the South County area . . . [¶] . . . fairly easily by just calling a neighboring agency."

The DMV hearing officer sustained the one-year order of suspension, finding all required facts had been established by a preponderance of the evidence, including the fact that Tarzia refused the blood test. The hearing officer added, "The reasonableness of attempts to accommodate [Tarzia's] request, the arresting agency's policies, and the procedures of the [crime lab] are not at issue in this hearing."

Tarzia petitioned for a writ of mandate from the superior court. In denying the writ, the court found "the deputy's modest efforts were legally sufficient to establish unavailability without the further efforts [Tarzia] claims were required." The court "concede[d] that requiring a search of nearby substations might have the salutary effect of encouraging officers to carry with them breath testing devices, [but] the court [did] not read the law as demanding this."

DISCUSSION

Tarzia argues he did not refuse to submit to a chemical test. He agreed— without qualification or conditions—to take a breath test. He contends that the evidence was insufficient to show his chosen test was "unavailable," so he had no obligation to submit to a blood test under the implied consent law. (§ 23612.) Based on the specific, undisputed facts of this case, we agree.

The implied consent law (section 23612) and the license suspension/ revocation statute (section 13353) "work[ ] in tandem." (*Troppman v. Valverde* (2007) 40 Cal.4th 1121, 1129–1130 (*Troppman*).) Under the implied consent law, "[a] person who drives a motor vehicle is deemed to have given his or her consent to chemical testing of his or her blood or breath for the purpose of determining the alcoholic content of his or her blood, if lawfully arrested for" a DUI offense. (§ 23612, subd. (a)(1)(A).) Under the

5

license suspension/revocation statute, the DMV can suspend or revoke the driver license of a motorist who "refuses the officer's request to submit to, or fails to complete, a chemical test or tests pursuant to [s]ection 23612." (§ 13353, subd. (a).) To do so, the DMV must conclude four facts to be true by a preponderance of the evidence. (§§ 13353, subd. (d), 13557, subd. (b)(1).) "When an administrative agency initiates an action to suspend or revoke a license, the burden of proving the facts necessary to support the action rests with the agency making the allegation." (*Daniels v. Department of Motor Vehicles* (1983) 33 Cal.3d 532, 536.) Only one of these factual findings is at issue in this appeal: The motorist "refused or failed to complete the chemical test or tests after being requested by a peace officer."[5] (§§ 13353, subd. (d), 13557, subd. (b)(1).)

Following a DMV order of suspension or revocation, the motorist may petition for a writ of mandate in superior court. (*Espinoza, supra*, 10 Cal.App.5th at p. 99.) Here, "a trial court is required to determine, based on its independent judgment, "'whether the weight of the evidence supported the administrative decision.'" [Citations.]" (*Lake v. Reed* (1997) 16 Cal.4th 448, 456 (*Lake*).) In exercising its independent judgment, the trial court "must afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence." (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817.)

Generally, on appeal we must uphold the trial court's findings if supported by substantial evidence. (*Lake*, *supra*, 16 Cal.4th at p. 456.) But "[w]hen the facts are

---

5        The other three findings are: "(1) the officer had reasonable cause to believe the motorist drove under the influence of alcohol in violation of section 23152 or 23153; (2) the motorist was lawfully detained; . . . and (4) the motorist was admonished that his or her driving privilege would be suspended or revoked if he or she refused to submit to or failed to complete a chemical test. (§§ 13353, subd. (d), 13557, subds. (a), (b)(1).)" (*Espinoza v. Shiomoto* (2017) 10 Cal.App.5th 85, 99 (*Espinoza*).)

undisputed, as here, a question involving the proper application of a statute or administrative regulation is one of law, and a reviewing court is not bound by the trial court's determination." (*Payne v. Department of Motor Vehicles* (1991) 235 Cal.App.3d 1514, 1517.) We therefore apply a de novo review to the issue presented here. (*Ibid.*)

A motorist lawfully arrested for allegedly driving under the influence of alcohol "has the *choice* of whether the test shall be of his or her blood or breath and the officer shall advise the person that he or she has that choice." (§ 23612, subd. (a)(2)(A), italics added.) Because the tests are "administered at the direction of a peace officer" (§ 23612, subd. (a)(1)(C)), the responsibility to provide the chosen test falls squarely on law enforcement. If the chosen test is "unavailable," the motorist "shall submit to the remaining test[.]" (§ 23612, subds. (a)(1)(A), (a)(2)(A), (d)(2).) The term "unavailable" is not defined in the statute, but it is commonly understood to mean "not able to be used or obtained; not at someone's disposal," as it relates to an object. (Oxford American Dict. (3d ed. 2010) p. 1878.)

In their briefing, the parties invite us to set a standard for an officer's duties in providing a motorist with his chosen chemical test. We decline to do so because it is unnecessary to resolve this appeal. We instead conclude that the undisputed facts of this case are insufficient as a matter of law to support a finding that an evidentiary breath-test machine was "unavailable" in the area, as that term is used in the implied consent law. (§ 23612, subds. (a)(1)(A), (a)(2)(A), (d)(2).) The OC Sheriff's Department has "many" machines, but not enough for every on-duty deputy, so the machines are distributed to subagencies based on their size and average frequency of use. Deputies are trained that when they need a machine they do not have, they are to ask to borrow one from nearby agencies, which could be accomplished "fairly easily."[6] Here, after realizing no yellow

---

[6] The trial court found the forensic scientist "credibly testified, without contest . . . to her opinion that a breath test would have been available at another substation."

box was at the scene, Deputy Derifield made one general radio broadcast for one; waited fewer than four minutes for a response; and after receiving none, determined a yellow box could not be located. He did not call any of the three nearby locations, which he acknowledged were minutes away from the scene, nor did he consult his supervisor for guidance. Simply put, under these circumstances, the lack of a response to one general radio broadcast does not show that evidentiary breath-test machines were unavailable in the deputy's area.

The DMV's reliance on *Espinoza v. Shiomoto* does not persuade us to the contrary. There, a motorist, who was a public defender, agreed to submit to a blood test "'pursuant to *McNeely*'"[7]—meaning she would submit only if the police obtained a warrant. (*Espinoza, supra*, 10 Cal.App.5th at p. 94.) The arresting officer did not seek a warrant, due to departmental policy not to seek them in misdemeanor cases. (*Ibid.*) She also refused a breath test. (*Ibid.*) The appellate court determined the motorist's refusal to submit to a breath test—not the blood test—supported her license suspension. (*Id.* at p. 113.) It "assume[d] without deciding, that [the motorist] could refuse to submit to a warrantless blood test unless the police obtained a warrant, and that, without more, her refusal to do so could not result in her license being suspended." (*Ibid.*) The court announced that "[u]nder the implied consent law, when either a blood test or a breath test is *unavailable for whatever reason*, the motorist must submit to and complete the available test[.]" (*Id.*, at pp. 114–115, italics added.) In concluding the motorist was obligated to submit to the breath test, the court determined the "blood test was functionally unavailable . . . because [the motorist] did not give actual consent to a blood

---

7        In *Missouri v. McNeely* (2013) 569 U.S. 141, 151–153, 156, the United States Supreme Court reaffirmed that the natural dissipation of alcohol in the blood may constitute an exigency justifying a warrantless blood draw but refused to adopt a per se warrant exception in every DUI case. The Court instead held that whether "a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." (*Ibid*.)

test and, instead, conditioned her purported consent on [the officer] obtaining a warrant." (*Id.* at p. 115.) We read the *Espinoza* court's reference of unavailability "for whatever reason" (*ibid.*) as dicta. To the extent the court intended to set a bright-line rule for unavailability—we think it did not—we do not agree. As argued by Tarzia, such a rule would effectively permit law enforcement to deprive motorists of their choice of test, for example, by not equipping any officers or stations with evidentiary breath-test machines.

The remaining cases relied upon by the DMV are factually distinguishable from this case for the same reason: The appellate courts upheld refusals that were not in any way based on the officer's failure to *obtain or produce* the motorist's chosen test. (See *McConville v. Alexis* (1979) 96 Cal.App.3d 705, 596 [driver failed to perform second part of chosen urine test]; *Buchannan v. Department of Motor Vehicles* (1979) 100 Cal.App.3d 293, 298 [driver was offered three tests at time of arrest, was informed he had to choose blood test before police car passed the hospital, but waited until car reached the police station to choose blood test]; *Butler v. Department of Motor Vehicles* (1981) 115 Cal.App.3d 913, 915 [driver chose blood test but refused to sign hospital consent form]; *Smith v. Department of Motor Vehicles* (1986) 179 Cal.App.3d 368, 371 [officer reasonably determined blood test was only feasible option after medical staff prohibited removing injured driver from gurney for urine test]; *Hildebrand v. Department of Motor Vehicles* (2007) 152 Cal.App.4th 1562 [driver would not blow hard enough to complete chosen breath test]; *White v. Department of Motor Vehicles* (2011) 196 Cal.App.4th 794, 797 [driver's chosen blood test attempted, but technician couldn't find a vein].)

Finally, we emphasize that our conclusion is limited to the specific facts of this case. We do not mean to suggest that officers must equip themselves with breath-test machines before their shifts, or that they must make a minimum number of calls—or any calls—to nearby agencies asking for one, before there can be a finding of unavailability. The issue of unavailability is inherently factual and must be determined case by case.

9

## DISPOSITION

The judgment denying the petition for writ of mandate is reversed with directions to the superior court to enter judgment granting the writ petition. Appellant shall recover costs on appeal.


DELANEY, J.

WE CONCUR:


O'LEARY, P. J.


SANCHEZ, J.